**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOHONO O'ODHAM NATION, a federally recognized Indian tribe, *Plaintiff,* v. MARKWAYNE MULLIN, in his official capacity as Secretary of U.S. Department of Homeland Security; RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and ROSARIO VASQUEZ, in his official capacity as Chief of U.S. Border Patrol, *Defendants.* | Case No. 26-cv-2127-RJL |

**DECLARATION OF PAUL MICHAEL EHLERMAN**

I, Paul Michael Ehlerman, declare the following on the basis of personal knowledge to which I am competent to testify:

1.      I am an attorney at law, duly admitted to practice law in the State of Arizona. I currently serve as the Legislative Attorney for the Tohono O'odham Legislative Council, a position which I have held for twenty-four years. I make this declaration based on my personal knowledge of the facts stated herein.

2.      In my position as Legislative Attorney, I represent the Tohono O'odham Nation's Legislative Council and the Legislative Branch. My duties include representing and providing legal advice and counsel to the Tohono O'odham Legislative Council and the Legislative Branch, including on land use and border security legislation and agreements. I draft and

1

negotiate land use and border security legislation, agreements, and other authorizations when assigned.

3.      In my role as Legislative Attorney, I was involved in the Nation's discussions and negotiations with United States Customs and Border Protection ("CBP") for granting the Nation's consent to rights-of-way on Nation lands for CBP to construct, install, and operate ten Integrated Fixed Tower surveillance towers; construct, maintain, and use access and approach roads to the tower sites; and improve or construct, maintain, and use the Traditional Northern Road, which is the primary road that CBP uses to patrol the border on the Nation's Reservation. In the course of the negotiations, the Nation and CBP were represented by legal counsel, met extensively, discussed and negotiated terms, and exchanged and edited draft conditions, terms, resolutions, and agreements. The negotiations and draft exchanges resulted in a final, executed "Agreement Between the Tohono O'odham Nation and United States Customs and Border Protection for Conditions for Grants of Easement for Rights-of-Way for Integrated Fixed Tower Project, Access and Approach Roads, and Traditional Northern Road" (Agreement) which comprises the Nation's conditions for consenting to rights-of-way for CBP to use the Nation's land for the Integrated Fixed Towers, access and approach roads, and the Traditional Northern Road. Both parties agreed to the terms of the Agreement after carefully reviewing and scrutinizing its language.

4.      **Attachment A** is a true and correct copy of the final, executed Agreement between the Tohono O'odham Nation and CBP agreeing to conditions for the Nation's consent to rights-of-way for CBP to construct, access, maintain, and operate the Towers; and for the access and approach roads and the Traditional Northern Road. This Agreement was executed by the Nation and CBP in April of 2019.

2

5.      One of the Recitals to **Attachment A** provides: "In 1854 the United States created an international boundary with Mexico that cuts through Tohono O'odham lands and that today forms the 62-mile southern boundary of the Tohono O'odham Nation's main reservation."

6.      An earlier draft of the Agreement contained numerous references to the Roosevelt Reservation existing within or in relation to the Nation's Reservation. The Nation informed CBP of its proposal to remove these references, and on May 17, 2018, delivered edits to CBP striking all references to the Roosevelt Reservation. CBP agreed to the Nation's edits, and the stricken language is not contained in the final Agreement.

7.      **Attachment B** is a true and correct PDF copy of an unexecuted, preliminary draft of the Agreement, which shows the Nation's proposed edits in redline. Language in this document displayed in blue text with a strike-through line represents the Nation's proposed deletions. Language in this document displayed in blue text with an underline is the Nation's proposed text for inclusion.

8.      **Attachment C** is a true and correct PDF copy of the transmittal email, under which an attorney for the Nation delivered the redlined draft Agreement reflected in **Attachment B** to an attorney for CBP, and on which I was a copied recipient.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 14th day of July, 2026

By:  _Paul Michael Ehlermar_
Paul Michael Ehlerman
Legislative Attorney
Tohono O'odham Nation Legislative Branch

**Signature:** _Paul Michael Ehlerman_
Paul Michael Ehlerman (Jul 14, 2026 11:52:09 PDT)
**Email:** michael.ehlerman@tonation-nsn.gov

3

# ATTACHMENT A

**Agreement Between the Tohono O'odham Nation and United States Customs and Border Protection for Conditions for Grants of Easement for Rights-of-Way for Integrated Fixed Tower Project, Access and Approach Roads, and Traditional Northern Road**

## RECITALS

The Tohono O'odham Nation ("Nation") is a sovereign, federally recognized Indian tribe organized pursuant to its Constitution adopted in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. § 476).

The unallotted lands of the Tohono O'odham Nation "are a valuable public resource and shall be held as national lands forever." Constitution of the Tohono O'odham Nation, Article XVI, Section 1.

The Nation's Legislative Council is vested with control and management thereof and uses of unallotted national lands must be approved by Legislative Council resolution, Nation's law, or a lease or other agreement authorized or approved by the Legislative Council, Constitution, Article XVI, Section 1; Article VI, Section 1(f) and (j).

Unlike national forests, wilderness areas, and other federal lands on the international boundary dividing the United States and Mexico, the Nation's reservation is not public land and the Nation has a duty to ensure that tribal members' rights and the Nation's sovereignty are protected.

In 1854 the United States created an international boundary with Mexico that cuts through Tohono O'odham lands and that today forms the 62-mile southern boundary of the Tohono O'odham Nation's main reservation.

The Tucson Sector of the United States Border Patrol, as part of Customs and Border Protection ("CBP") of the Department of Homeland Security, is responsible for securing the border along the international boundary with Mexico ("International Boundary"), including the areas on the Nation's lands.

Pursuant to the Department of Homeland Security's Tribal Consultation Policy, "The United States recognizes the right of Federally-recognized Indian Tribes ("Indian Tribes") to self-government. Indian Tribes exercise inherent sovereign powers over their members and territories." DHS Tribal Consultation Policy, I.A.

CBP has proposed to construct an Integrated Fixed Tower ("IFT") system on the Nation and has requested that the Nation consent to grants of easement for rights-of-way for IFT tower sites and related access roads and approach roads.

The Nation has previously authorized the construction, maintenance, and grant of easement for a right-of-way for portions of the Traditional Northern Road which CBP uses to patrol the International Boundary and which provide access to proposed IFT roads and sites. (Legislative Council Resolutions No. 04-095, No. 14-472 and No. 14-518.)

1

By tribal and federal law, CBP requires the Nation's consent to pursue grants of easement for rights-of-way from the Bureau of Indian Affairs ("BIA") for the long-term rights to construct individual tower sites, to construct, improve, maintain and repair associated tower access and approach roads, and portions of the Traditional Northern Road, including low-water crossings, and for temporary construction easements for work/staging areas required for construction.

Pursuant to 25 C.F.R. § 169.107(a), CBP must obtain the Nation's consent for rights-of-way across tribal land, "in the form of a tribal authorization and a written agreement with the tribe, if the tribe so requires" and "the consent document may impose restrictions or conditions; any restrictions or conditions automatically become conditions and restrictions in the grant."

As a condition of Nation's consent for rights-of-way across tribal land, CBP and the Nation therefore agree to the below conditions and restrictions, which shall be conditions and restrictions in the grant of easement for rights-of-way for tower sites and associated tower access and approach roads, low-water crossings along the Traditional Northern Road, and for temporary rights to use work/staging areas required for construction purposes; provided that this Agreement does not itself encumber the Nation's lands.

## CONSENT AND CONDITIONS

Consent to the grants of easement for rights-of-way. Pursuant to Resolution No. 19-xxx, the Nation consents to the grants of easement for rights-of-way to CBP ("Grantee") from the BIA for portions of the Traditional Northern Road, individual tower sites and associated tower access and approach roads, low-water crossings along portions of the Traditional Northern Road, and for the Temporary Construction Easements at each of the tower sites; all of which are described in the following Grants of Easement for Rights of Way:

1. Grant of Easement for Right-of-Way for TCA-AJO-0450 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
2. Grant of Easement for Right-of-Way for TCA-AJO-0448 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
3. Grant of Easement for Right-of-Way for TCA-AJO-0446 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
4. Grant of Easement for Right-of-Way for TCA-CAG-0442 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
5. Grant of Easement for Right-of-Way for TCA-CAG-0440 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
6. Grant of Easement for Right-of-Way for TCA-CAG-0438 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
7. Grant of Easement for Right-of-Way for TCA-CAG-0436 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
8. Grant of Easement for Right-of-Way for TCA-CAG-0434 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
9. Grant of Easement for Right-of-Way for TCA-CAG-0430 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.

2

10. Grant of Easement for Right-of-Way for TCA-CAG-0444 Tower Site and associated Access Road, Approach Road, and Temporary Construction Easement.
11. Grant of Easement for Right-of-Way for Portions of the Traditional Northern Road.
12. Grant of Easement for Right-of-Way for Low Water Crossings.

These grants of easement for rights of way are subject to the following conditions, except to the extent that the following conditions are inconsistent with, or in addition to, the specific terms applicable to each grant of easement for right of way, in which case the specific terms of each individual grant of easement for right of way shall control:

1. **GRANT.** In consideration of the payment of  $2,100,000, by CBP to the Nation, as set forth in the Rights-of-Way Compensation Agreement between CBP and the Nation attached as Exhibit "A" to the Grants of Easement for Rights of Way, paid in a lump-sum to the Nation, no later than thirty days after the date the rights-of-way are granted.

Pursuant to 25 C.F.R. § 169.110 and Tohono O'odham Legislative Council Resolution No. 19-088, attached as Exhibit C to the Grants of Rights-o-Way, the Nation has negotiated with GRANTEE for compensation that is satisfactory to the Nation, the Nation has waived valuation by the BIA, and has determined that accepting such agreed-upon compensation and waiving valuation is in its best interest. The Nation is not requesting that the BIA determine fair market value.

GRANTOR does hereby grant to GRANTEE, a right-of-way for GRANTEE, its officers, agents, and contractors to enter the PROPERTY, for:

(A)    An exclusive grant of easement for right-of-way for construction, installation, maintenance, operation and repair of the individual IFT sites along with all necessary and related structures within fenced perimeters and for the IFT camera and radar system or successor technologies, that do not exceed the scope of the camera and radar system described herein, that provide long-range, persistent surveillance, enable GRANTEE personnel to detect, track, identify, and classify illegal entries through a series of integrated sensors and tower-based camera and radar surveillance equipment.

(B)    A non-exclusive grant of easement for right-of-way for construction, installation, maintenance, operation and repair of portions of the Traditional Northern Road, Access and Approach Roads, including necessary and related improvements to those roads such as drainage culverts, low-water crossings, and signage.

The Nation's consent extends to GRANTEE's installation of GRANTEE's digital communication equipment on the IFT. The Nation understands that in the event CBP is renamed, reorganized, or otherwise restructured, its successor in interest will be authorized to operate the IFT system or successor technologies.

GRANTEE shall provide the Nation's Police Department, Realty Office, and Chukut Kuk and Gu Vo Districts with 10 days advance written notice if Grantee determines it needs to change or replace any IFT system equipment or technical capabilities with equipment or technical capabilities that are consistent with the scope and purpose identified in subsection 1(A) above.

2. **TERM.** This right-of-way is for a term of __25-years_ so long as the right-of-way is used for the purpose above specified.

3

## 3. CANCELLATION.

(A)    This right-of-way may only be cancelled

(1)    in accordance with 25 C.F.R. Part 169 for abandonment, non-use, or violation of the right-of-way grant or right-of-way documents, including but not limited to encroachments beyond the defined boundaries, accidental, willful, and/or incidental trespass, unauthorized new construction, changes in use not permitted in the grant, or late or insufficient payment; or

(2)    by the GRANTOR for non-use of the right-of-way after construction has been completed and the technology has been installed for any consecutive two-year period (for the purpose for which it was granted) upon 30 days written notice, and failure of the GRANTEE within said notice period to correct the basis for cancellation.

(B)    The authority to cancel is independent of, and in addition to, the Nation's authority to terminate the right-of-way grant; and a violation forming the basis for cancellation may also form the basis for termination.

## 4. TERMINATION.

(A)    The Nation may terminate the right-of-way grant in accordance with this Section 4 without BIA approval and the termination shall be effective without BIA cancellation; provided that the Nation will provide the BIA with written notice of the termination so that it may be recorded in the Land Title Records Office.

(B)    The authority to terminate is independent of, and in addition to, the BIA's authority to cancel the right-of-way grant; and a violation forming the basis for termination may also form the basis for cancellation.

(C)    The Nation will follow the same process for termination of rights-of-way as is provided  for BIA cancelation in 25 C.F.R. Part 169 for the cancellation of rights-of-way, as applicable. provided that the Nation's Realty Office, and not the BIA, shall determine if there has been a violation of the conditions of the grant and otherwise perform the applicable functions of the BIA as set forth under the Part 169 cancellation provisions, and shall provide a copy of a written notice of violation and other relevant notices regarding the termination process to the BIA Papago Agency ("Agency") and BIA Western Regional Office ("WRO"). Within 10 business days of the GRANTEE'S receipt of a notice of violation, the Nation will provide GRANTEE with the opportunity to meet and discuss the cure for an alleged violation, provided that GRANTEE retains the right to dispute the determination that a violation has occurred, request additional time to cure the violation, and otherwise exercise GRANTEE's rights in accordance with 25 C.F.R. Part 169, Subpart F. A right of appeal pursuant to this Section 4 shall not be permitted.

5. RENEWAL.   The GRANTEE has an option to renew the right-of-way for an additional term of between 10 and 25 years.  The GRANTEE must provide written notice to the Nation and BIA of the intent to renew the right-of-way 36 months prior to the end of the original term.  Compensation for the renewal term will be negotiated with the Nation beginning when the notice of intent to renew is received and the parties may obtain appraisals of the PROPERTY to assist in negotiations.

6. BEST MANAGEMENT PRACTICES. The Grantee agrees to comply with any best management practices or conditions in the IFT Final Environmental Assessment (March 2017), attached as Exhibit D, to reduce or eliminate potential adverse impacts on the human and natural environments within the right-of-way area. The Grantee will make a good faith attempt to resolve any actual deviation from the best management practices or conditions set forth in the IFT Final Environmental Assessment (March 2017). The Grantee and the Nation agree that any actual or alleged deviation from any best management practices or conditions described in the IFT Final Environmental Assessment and intended to reduce or eliminate potential adverse impacts on the human and natural environments within the right-of-way area

4

shall be subject to the notice, opportunity to cure, and additional provisions of 25 C.F.R. Part 169 for cancellation or termination of the right-of-way.

7. **RESERVATION OF JURISDICTION.** To the extent consistent with Federal law, the Nation maintains its existing jurisdiction over the land, activities, and persons within the right-of-way and this grant does not diminish to any extent: (a) the Nation's power to tax the land, any improvements on the land, or any person or activity within, the right-of-way; (b) the Nation's authority to enforce tribal law of general or particular application on the land subject to and within the right-of-way, as if there were no grant of right-of-way; (c) the Nation's inherent sovereign power to exercise civil jurisdiction over non-members on Indian land; or (d) the character of the land subject to the right-of-way as Indian country under 18 U.S.C. § 1151.

8. **LAWS.** GRANTEE shall comply with all applicable federal laws, and the Nation's laws which are not inconsistent with applicable federal law. Notwithstanding any provision in this grant of right-of-way, GRANTEE lacks authority to waive the United States' federal sovereign immunity for any purpose, and nothing in this agreement should be construed as a waiver of any federal sovereign immunity of GRANTEE or the United States federal government generally. Nothing herein shall require GRANTEE to perform any act or omission in a manner that would constitute a violation of federal law.

9. **REGULATORY PROVISIONS.**

(A)     The Nation has the right to reasonable access to the lands subject to the grant, which are unallotted tribal land. Specifically, the Nation, its employees and agents, and Nation's members may use the IFT Approach and Access roads for travel and any purpose not inconsistent with the primary purpose for which the right of way is granted. The Nation, its employees, agents, and Nation's members shall not have access within the fenced perimeter of the IFT site except that the Nation may, with advance written notice and accompanied by GRANTEE, access such site for inspection to ensure GRANTEE's compliance with the terms of the grant or to protect public health and safety.

(B)     The GRANTEE has no right to any of the products or resources of the land, including but not limited to, timber, forage, mineral, and animal resources, unless otherwise provided for in the grant.

(C)     BIA may treat any provision of a grant that violates Federal law as a violation of the grant.

(D)     If historic properties, archeological resources, human remains, or other cultural items not previously reported are encountered during the course of any activity associated with this grant, all activity in the immediate vicinity of the properties, resources, remains, or items will cease and the GRANTEE will contact BIA and the Nation to determine how to proceed and how to conduct appropriate disposition in accordance with the IFT Final Environmental Assessment Best Management Practices.

(E)  GRANTEE must:

> **(i)** Construct and maintain improvements within the right-of-way in a professional manner consistent with industry standards;
> **(ii)** Pay promptly all damages and compensation determined by the BIA to be due the Nation and authorized users and occupants of land as a result of the granting, construction, and maintenance of the right-of-way, as described in Exhibit E, attached hereto;
> **(iii)** Restore the land as nearly as may be possible to its original condition upon the completion of construction, as described in Exhibit E, attached hereto;
> **(iv)** Clear and keep clear the land within the right-of-way, to the extent compatible with the purpose of the right-of-way, and dispose of all vegetative and other material cut, uprooted, or otherwise accumulated during the construction and maintenance of the project;
> **(v)** Comply with all laws as outlined herein at Section 8 and obtain all required permits;

5

(vi) Not commit waste;

(vii) Operate, repair and maintain improvements consistent with the right-of-way grant;

(viii) Build and maintain necessary and suitable crossings for all roads and trails that intersect the improvements constructed, maintained, or operated under the right-of-way;

(ix) Restore the land to its original condition, as much as reasonably possible, at the end of the right-of-way term, or any renewal term, or upon cancellation or termination of the right-of-way, as described in Exhibit E, attached hereto;

(x) At all times keep the BIA, and the Nation, informed of the GRANTEE's address;

(xi) Refrain from interfering with the landowner's use of the land, provided that the landowner's use of the land is not inconsistent with the right-of-way, however, as noted above, tribal members are not authorized to access or use the land within the fenced perimeter of the IFT tower sites except as provided herein;

(xii) Comply with the following due diligence requirements: GRANTEE will provide the Nation's Realty Office, Roads Program, Environmental Protection Office, Wildlife and Vegetation Management Program ("WVMP"), Tribal Historic Preservation Office ("THPO"), Chukut Kuk District, and Gu Vo District with construction schedules and scopes of work for the two-phased construction process associated with the rights-of-way: (1) construction of roads and preparation of tower sites followed by (2) installation of towers and the technology on the towers. GRANTEE shall complete construction of any permanent improvements within the schedule specified in the right-of-way grant or general schedule of construction, or as amended by the parties. Given the inherent uncertainties and delays associated with construction activities, such as weather delays, unforeseen site conditions, and protests related to the federal procurement process. GRANTEE may need to amend the construction schedules with the Nation's written consent to account for such delay and increased construction time. GRANTEE shall notify the Nation in writing when construction is completed. If construction does not occur, or is not expected to be completed, within the time period specified, the GRANTEE must provide the Nation's Realty Office and BIA with an explanation of good cause as to the nature of any delay, the anticipated date of construction of facilities, and evidence of progress toward commencement of construction. The Nation shall consent to construction schedule amendments for delays that are beyond GRANTEE's control, and such delays shall not be a basis for cancellation, termination, or any other remedy. The Nation shall not unreasonably withhold its consent to a construction schedule amendment, shall provide GRANTEE with a written explanation for denying any schedule amendment, and will meet and confer with GRANTEE in an effort to resolve any schedule disputes. If the Nation does not provide a written response to GRANTEE's proposed construction schedule amendment within 30 days of receipt by the Nation, the amendment will be deemed approved.

(F)    Indian Preference. To the extent permitted by federal procurement statutes and regulations, GRANTEE'S contractors or contractors of other federal agencies performing work in the rights-of-way shall provide Indian preference in accordance with 13 Tohono O'odham Code Chapter 1 – Tribal Employment Rights.

10. **ENCROACHMENT.** GRANTEE may not unreasonably withhold its consent for a new right-of-way within its existing right-of-way that does not interfere with the use or purpose of its right-of-way. GRANTOR understands that due to the nature of the activity at the IFT tower site that GRANTEE may withhold its consent for a new right-of-way over, under or across an IFT tower site.

11. **PERMANENT IMPROVEMENTS.**   GRANTEE shall be the owner of any permanent improvements constructed during the term of the Grant, including any renewal term.

12. **REMOVAL OF PERMANENT IMPROVEMENTS.** Within 180 days after the end of the term or any renewal term, or cancellation or termination of the right-of-way, GRANTEE will remove all sensitive equipment, including but not limited to technological components, permanent improvements, appurtenances, fixtures and equipment placed within the right-of-way; except that the

6

Nation may agree, by Legislative Council resolution and with the express consent of the GRANTEE, to take possession of and title to some or all of the permanent improvements, including some or all of the sensitive equipment.

13. **AMENDMENT.** This grant may not be amended except as provided in 25 C.F.R. §§ 169.204 - 169.206.

14. **ASSIGNMENT.** This grant m a y not be assigned __without__ applicable consent and BIA approval and within 30 days. a copy of the assignment and supporting documents will be sent to BIA for recording in the LTRO. As GRANTEE is a Department/Agency of the United States, a change in the name of the Department/Agency or a transition of this border security function to another Department/Agency is not considered an Assignment and does not require consent of the Nation or approval of the GRANTOR.

15. **MORTGAGE.** As GRANTEE is a Department/Agency of the United States, this grant may not be mortgaged.

16. **EFFECTIVE DATE.** Grant will be effective on the date it is approved by the BIA. The GRANTEE's obligations are triggered on __(date)__ (if applicable).

17. **REMEDIES.** Any disputes regarding violations, abandonment, or non-use may be addressed in accordance with 25 CFR 169, Subpart F, as may be amended.

18. **BINDING EFFECT.** The terms of this grant shall extend to and be binding upon and shall inure to the benefit of the successors of the GRANTEE.

19. **USE OF TOWERS BY THE NATION.** The GRANTEE may, by separate written agreement and on terms mutually agreeable to both parties, allow for the Nation, at the Nation's sole expense, to operate, and maintain public safety communications equipment on an IFT tower provided that certain issues, including but not limited to, access to the site, impact on construction warranties, and compatibility with the GRANTEE's use of the site, can be resolved. Prior to entering into any such agreement, GRANTEE would need to verify that the installation of such public safety communications equipment would not impact the structural integrity of the IFT tower, would not interfere with GRANTEE operations and the operation and use of the IFT system or successor technologies, would not impact warranties running in favor of GRANTEE with respect to the tower and IFT system or successor technologies, or result in any cost or liability to GRANTEE. Except as otherwise provided in this section, GRANTEE shall not permit any person or entity other than GRANTEE's employees. contractors, or agents to install, operate. or maintain equipment or technology on the IFT tower or within the right-of-way without the Nation's advance consent as authorized by Legislative Council resolution.

20. **EXCLUSION ZONES.**

(A)    The Nation may request the creation of geographic zones within the boundaries of the Nation or within traditional Tohono O'odham territories (i.e., land directly south of the international border with Mexico) that are temporarily excluded from coverage of the Integrated Fixed Tower System deployed on the Nation. Such zones shall be referred to as "Exclusion Zones." All requests for the creation of an Exclusion Zone pursuant to subsections B and C below shall be submitted in writing by the Nation's Department of Public Safety executive director and directed to the Tucson Sector Chief Patrol Agent and Tucson Sector Tribal Liaison.

(B)    All requests for the creation of an Exclusion Zone for funerals, wakes, burials, traditional ceremonies and practices, sacred deer hunts and reburial ceremonies shall by submitted with as much advance notice as possible.

7

(C)    All other requests for the creation of an Exclusion Zone that do not fit within subsection B above shall be submitted at least 7 days in advance of the requested exclusion start date.

(D)    All requests for the creation of an Exclusion Zone pursuant subsections B and C above shall include the following information: (1) a geographic description of the area proposed for exclusion; (2) the proposed limited duration of the exclusion; (3) the justification for seeking the exclusion; and (4) a point of contact for questions or additional information; provided that sensitive information, e.g., reburial location, may be provided by the Department of Public Safety executive director to the Tucson Sector Chief Patrol Agent and Tucson Sector Tribal Liaison by a separate communication.

(E)    Decisions on all requests for the creation of an Exclusion Zone will be made in writing by the Tucson Sector Chief Patrol Agent, or his designee.  Decisions will be directed to the Nation's Department of Public Safety executive director.

> i. The Tucson Sector Chief Patrol Agent shall have complete discretion to approve or deny any request for the creation of an Exclusion Zone.  The decisions of the Tucson Sector Chief Patrol Agent are not subject to administrative or judicial review.  However such decisions must set forth the reasons for a denial, if issued.
> ii. Decisions on requests submitted under subsections B and C shall be made within 72 hours of receiving such requests.

(F)    Requests for the creation of permanent or indefinite Exclusion Zones will not be considered by the Tucson Sector Chief Patrol Agent.  Accordingly, the Tucson Sector Chief Patrol Agent will not issue decisions on such requests.

(G)    The Nation, Tucson Sector Chief Patrol Agent, and Tucson Sector Tribal Liaison shall meet annually to review the implementation of this Section 20 and determine whether it should be amended in accordance with 25 CFR 169.204-169.206.

21. **CONSENT.** The Nation consented to this right-of-way grant in Legislative Council Resolution No. 19-088.  This Grant of Right-of-Way shall remain in effect notwithstanding any subsequent Legislative Council resolutions revoking or modifying such consent; provided that the grant may be cancelled or terminated in accordance with the provisions of 25 C.F.R. Part 169 and this grant.

22. **USE OF INFORMATION.** To the extent permitted by Federal law, GRANTEE may, as necessary, share information provided by or obtained from the IFT system or successor technologies with other entities, including but not limited to, other federal agencies, and the Tohono O'odham Police Department may request such information for law enforcement purposes.

23. **ADDITIONAL CONDITIONS OR RESTRICTIONS.** The Agreement incorporates by reference the terms, conditions, and restrictions set out in the following, additional right-of-way documents that are incorporated by reference:

> (A) Compensation Agreement, attached as Exhibit A to the Grants of Easement.
> (B) Legal Description, attached as Exhibit B to the Grants of Easement.
> (C) Tribal Resolution No. 19-088, attached as Exhibit C to the Grants of Easement.
> (D) The IFT Final Environmental Assessment (March 2017), attached as Exhibit D to the Grants of Easement.
> (E) Grantee's Restoration Obligations and Limitations, attached as Exhibit E to the Grants of Easement.
> (F) The Grants of Easement for Rights of Way for the individual Integrated Fixed Tower Sites (along with access roads, approach roads), portions of the Traditional Northern Road and the Low Water Crossing identified above;.
> (G) IFT Site Temporary Construction Easement, attached as Exhibit G to the Grants of Easement.

24.  **FIVE-YEAR REVIEW.**  GRANTEE and the Nation, in consultation with affected members, communities, and districts, shall conduct a detailed review of the IFT project every five years, including for compliance with these conditions, additional right-of-way documents, and all applicable laws and regulations.  To the extent these five-year reviews include potential compliance issues, GRANTEE and the Nation agree to work cooperatively to remedy potential compliance issues with the understanding that the 25 year right-of-way will remain in effect in accordance with its terms and applicable laws and regulations, including 25 C.F.R. Part 169.

25.  **ADDITIONAL USES OF NATION'S LANDS.**  The twelve grants of easement for rights of way identified in this Agreement are designed as part of integrated strategy to provide CBP with operational control of the international boundary.  It is therefore in the interests of the Nation and CBP to negotiate additional, necessary grants of easement for rights of way, leases, authorizations, or agreements as necessary to authorize CBP's use of Nation's lands outside of the twelve grants of easement for rights of way identified in this Agreement.

The Nation is a sovereign, federally recognized Indian tribe organized pursuant to its Constitution adopted in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. § 476) and the unallotted lands of the Tohono O'odham Nation "are a valuable public resource and shall be held as national lands forever." Constitution of the Tohono O'odham Nation, Article XVI, Section 1.  The Nation's Legislative Council is vested with control and management thereof and uses of unallotted national lands must be approved by Legislative Council resolution, Nation's law, or a lease or other agreement authorized or approved by the Legislative Council. Constitution, Article XVI, Section 1; Article VI, Section 1(f) and (j).

The Nation and Grantee therefore agree to negotiate in good faith a road use, maintenance, and repair agreement and other necessary grants, leases, authorizations, or agreements as necessary to authorize CBP's use of Nation's lands outside the twelve grants of easement for rights of way identified in this Agreement; provided that the failure to obtain such additional authorizations or reach such agreements shall not be grounds for cancellation or termination of the twelve grants of easement for rights of way identified in this Agreement.

IN WITNESS WHEREOF, the Tohono O'odham Nation and United States Customs and Border Protection have duly executed this Agreement as of the day and year indicated below.

FOR THE TOHONO O'ODHAM NATION

_____    _____4/16/2019_____
Edward D. Manuel, Chairman                              Date

Approved as to form:

_____    _____4/16/2019_____
Attorney General                                            Date

FOR U.S. DEPARTMENT OF HOMELAND SECURITY
CUSTOMS AND BORDER PROTECTION
BORDER PATROL TUCSON SECTOR

                                                            APR 0 9 2019
_____    _____
Roy D. Villareal, Chief Patrol Agent                    Date

10

# ATTACHMENT B

**Agreement Between the Tohono O'odham Nation and United States Customs and Border Protection for Conditions for Grants of Easement for Rights-of-Way for Integrated Fixed Tower Project, Access and Approach Roads, and Traditional Northern Road**

### RECITALS

The Tohono O'odham Nation ("Nation") is a sovereign, federally recognized Indian tribe organized pursuant to its Constitution adopted in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. § 476).

The unallotted lands of the Tohono O'odham Nation "are a valuable public resource and shall be held as national lands forever." Constitution of the Tohono O'odham Nation, Article XVI, Section 1.

The Nation's Legislative Council is vested with control and management thereof and uses of unallotted national lands must be approved by Legislative Council resolution, Nation's law, or a lease or other agreement authorized or approved by the Legislative Council, Constitution, Article XVI, Section 1; Article VI, Section 1(f) and (j).

Unlike national forests, wilderness areas, and other federal lands on the international boundary dividing the United States and Mexico, the Nation's reservation is not public land and the Nation has a duty to ensure that tribal members' rights and the Nation's sovereignty are protected.

In 1854 the United States created an international boundary with Mexico that cuts through Tohono O'odham lands and that today forms the 62-mile southern boundary of the Tohono O'odham Nation's main reservation.

~~In 1907 President Theodore Roosevelt issued a Presidential Proclamation which reserved a sixty-foot strip of land north of the international boundary (the "Roosevelt Reservation") to be "kept free from obstruction as a protection against the smuggling of goods between the United States" and Mexico (Presidential Proclamation 758, 35 Stat. 2136 (May 27, 1907)).~~

~~By Executive Orders dated June 16, 1911, May 28, 1912, December 5, 1912, and January 14, 1916, lands in southern Arizona were reserved for the benefit the Papago Indians.~~

~~Certain executive orders previously setting aside the Papago Reservation were revoked by the Executive Order of February 1, 1917, which set aside as a reservation for the Papago Indians all surveyed and unsurvey lands within what is now the majority of the Nation's main reservation, excluding the current reservation's southwest corner near and around Ali Chuk and Menager's Dam.~~

~~The Act of July 28, 1937, 50 Stat. 536 ("1937 Act") extended the Papago Indian Reservation to add land to the southwest corner of the reservation set aside in 1917, including approximately 11 miles along the international boundary, but provides that the addition "shall not affect" the Roosevelt Reservation.~~

1

The Tucson Sector of the United States Border Patrol, as part of Customs and Border Protection ("CBP") of the Department of Homeland Security, is responsible for securing the border along the international boundary with Mexico ("International Boundary"), including the areas on the Nation's lands.

Pursuant to the Department of Homeland Security's Tribal Consultation Policy, "The United States recognizes the right of Federally-recognized Indian Tribes ("Indian Tribes") to self-government. Indian Tribes exercise inherent sovereign powers over their members and territories."  DHS Tribal Consultation Policy, I.A.

CBP has proposed to construct an Integrated Fixed Tower ("IFT") system on the Nation and has requested that the Nation consent to grants of easement for rights-of-way for IFT tower sites and related access roads and approach roads.

The Nation has previously authorized the construction, maintenance, and grant of easement for a right-of-way for the portions of the Traditional Northern Road and Border Fence Road ~~lying outside of the 60-foot Roosevelt Reservation~~ (collectively, "Traditional Northern Road") which CBP uses to patrol the International Boundary and which provide access to proposed IFT roads and sites. (Legislative Council Resolutions No. 04-095, No. 14-472 and No. 14-518.)

By tribal and federal law, CBP requires the Nation's consent to pursue grants of easement for rights-of-way from the Bureau of Indian Affairs ("BIA") for the long-term rights to construct individual tower sites, to construct, improve, maintain and repair associated tower access and approach roads, and the Traditional Northern Road, including low-water crossings, and for temporary construction easements for work/staging areas required for construction.

Pursuant to 25 C.F.R. § 169.107(a), CBP must obtain the Nation's consent for rights-of-way across tribal land, "in the form of a tribal authorization and a written agreement with the tribe, if the tribe so requires" and "the consent document may impose restrictions or conditions; any restrictions or conditions automatically become conditions and restrictions in the grant."

As a condition of Nation's consent for rights-of-way across tribal land, CBP and the Nation therefore agree to the below conditions and restrictions, which shall be conditions and restrictions in the grant of easement for rights-of-way for tower sites and associated tower access and approach roads, low-water crossings along the Traditional Northern Road, and for temporary rights to use work/staging areas required for construction purposes; provided that this Agreement does not itself encumber the Nation's lands.

### CONSENT AND CONDITIONS

Consent to grant of easement for rights-of-way.  Pursuant to Resolution No. 18-xxx, the Nation consents to a grant of easement for rights-of-way to CBP ("Grantee") from the BIA for the Traditional Northern Road, individual tower sites and associated tower access and approach roads, low-water crossings along the Traditional Northern Road, and for a 3-year term for temporary construction work/staging areas; all of which are described in Exhibit A (legal

descriptions, maps of definite location, and tower site diagrams with dimensions) and the Exhibit B (Grant of Right-of-Way), which shall be incorporated into the final rights-of-way documents.

1. **GRANT.**  In consideration of:  $ INSERT, paid in a lump-sum to the Nation, by the date the right-of-way is granted.

This right-of-way is limited to and more particularly described to be (____ acres) in the area, as shown on Exhibit "A" attached hereto, and made a part hereof (the "PROPERTY"). Pursuant to 25 C.F.R. § 169.110 and Tohono O'odham Legislative Council Resolution No. 18-xxx, the Nation has negotiated with Grantee for compensation that is satisfactory to the Nation, the Nation has waived valuation by the BIA, and has determined that accepting such agreed-upon compensation and waiving valuation is in its best interest.  The Nation is not requesting that the BIA determine fair market value.

The Nation consent to a grant to CBP, rights-of-way for CBP, its officers, agents, and contractors to enter the PROPERTY, for:

(A)     An exclusive grant of easement for right-of-way for construction, installation, maintenance, operation and repair of ten (10) individual Integrated Fixed Tower ("IFT") towers and tower sites, along with all necessary and related structures at a designated tower site, within fenced perimeters and for the IFT camera and radar system or successor technologies, that do not exceed the scope of the camera and radar system described herein,  that provide long-range, persistent surveillance, enable Grantee personnel to detect, track, identify, and classify illegal entries through a series of integrated sensors and tower-based camera and radar surveillance equipment.

(B)     A non-exclusive grant of easement for right-of-way for construction, installation, maintenance, operation and repair of access and approach roads to IFT tower sites including necessary and related improvements to those roads such as drainage culverts, low-water crossings and signage. The Nation's consent to a non-exclusive grant of easement for right-of-way for the portions of the Traditional Northern Road and Border Fence Road ~~outside the Roosevelt Reservation~~ is for CBP to patrol the International Boundary and provide access to proposed IFT roads and sites.

The Nation's consent extends to Grantee's installation of Grantee's communication equipment on the IFT towers.  Additionally, the Nation understands that CBP will, as necessary, share information provided by or obtained from the IFT system or successor technologies with other entities, including but not limited to, other federal agencies, and the Tohono O'odham Police Department may request such information for law enforcement purposes subject to nondisclosure agreements or other conditions set by CBP.  The Nation understands that in the event CBP is renamed, reorganized, or otherwise restructured, its successor in interest will be authorized to operate the IFT system or successor technologies.

Grantee shall provide the Nation's Police Department, Realty Office, and Chukut Kuk and Gu Vo Districts with advance, written notice of any changes in IFT system equipment or technical capabilities, which equipment and technical capabilities shall be consistent with the scope and

3

purpose identified in subsection 1(A) above.

2.  **TERM.**  This right-of-way is for a term of 25-years so long as the right-of-way is used for the purpose above specified.

3. **CANCELLATION.**

(A)      This right-of-way may only be cancelled

(1)      in accordance with 25 C.F.R. Part 169 for abandonment, non-use, or violation of the right-of-way grant or right-of-way documents, including but not limited to encroachments beyond the defined boundaries, accidental, willful, and/or incidental trespass, unauthorized new construction, changes in use not permitted in the grant, or late or insufficient payment; or

(2)      by the BIA for non-use of the right-of-way after construction has been completed and the technology has been installed for any consecutive two-year period (for the purpose for which it was granted) upon 30 days written notice, and failure of the Grantee within said notice period to correct the basis for cancellation.

(B)      The authority to cancel is independent of, and in addition to, the Nation's authority to terminate the right-of-way grant; and a violation forming the basis for cancellation may also form the basis for termination.

4.  **TERMINATION**.

(A)      The Nation may terminate the right-of-way grant in accordance with this Section 4 without BIA approval and the termination shall be effective without BIA cancellation; provided that the Nation will provide the BIA with written notice of the termination so that it may be recorded in the Land Title Records Office.

(B)      The authority to terminate is independent of, and in addition to, the BIA's authority to cancel the right-of-way grant; and a violation forming the basis for termination may also form the basis for cancellation.

(C)      The Nation will follow the same process for termination of rights-of-way as is provided to the BIA for cancelation in 25 C.F.R. Part 169 for the cancellation of rights-of-way, as applicable, provided that the Nation's Realty Office, and not the BIA, shall determine if there has been a violation of the conditions of the grant and otherwise perform the applicable functions of the BIA as set forth under the Part 169 cancellation provisions, and shall provide a copy of a written notice of violation and other relevant notices regarding the termination process to the BIA Papago Agency ("Agency") and BIA Western Regional Office ("WRO"). A right of appeal pursuant to this Section 4 shall not be permitted.

5. **RENEWAL.**   The Grantee has an option to renew the right-of-way for an additional term of between 10 and 25 years.  The Grantee must provide written notice to the Nation and BIA of the intent to renew the right-of-way 36 months prior to the end of the original term.  Compensation

for the renewal term will be negotiated with the Nation beginning when the notice of intent to renew is received and the parties may obtain appraisals of the PROPERTY to assist in negotiations.

6. **MITIGATION MEASURES.** The Grantee agrees to comply with any mitigation measures or conditions described to protect environmental, biological and cultural resources within the right-of-way area as defined in the IFT Final Environmental Assessment.  The Grantee will make a good faith attempt to resolve any actual deviation from the mitigation measures or conditions set forth in the IFT Final Environmental Assessment. The Grantee and the Nation agree that any actual or alleged deviation from any mitigation measures or conditions described in the IFT Final Environmental Assessment and intended to protect environmental, biological, and cultural resources within the right-of-way area shall be subject to the notice, opportunity to cure, and additional provisions of 25 C.F.R. Part 169 for cancellation or termination of the right-of-way.

7. **RESERVATION OF JURISDICTION.**  To the extent consistent with Federal law, the Nation maintains its existing jurisdiction over the land, activities, and persons within the right-of-way and this grant does not diminish to any extent: (a) the Nation's power to tax the land, any improvements on the land, or any person or activity within, the right-of-way; (b) the Nation's authority to enforce tribal law of general or particular application on the land subject to and within the right-of-way, as if there were no grant of right-of-way; (c) the Nation's inherent sovereign power to exercise civil jurisdiction over non-members on Indian land; or (d) the character of the land subject to the right-of-way as Indian country under 18 U.S.C. 1151.

8.  **LAWS.**  Grantee shall comply with all applicable federal laws and the Nation's laws which are not inconsistent with applicable federal law.

9.  **REGULATORY PROVISIONS.**

(A)     The Nation has the right to reasonable access to the lands subject to the grant, which are unallotted tribal land.  Specifically, the Nation, its employees and agents, and Nation's members may use the IFT approach and access roads for travel and any purpose not inconsistent with the primary purpose for which the right of way is granted.  The Nation, its employees, agents, and Nation's members shall not have access within the fenced perimeter of individual IFT tower sites except that the Nation may with advance written notice and accompanied by Grantee access such sites for inspection to ensure Grantee's compliance with the terms of the grant, the Nation's laws, or to protect public health and safety.

(B)     The Grantee has no right to any of the products or resources of the land, including but not limited to, timber, forage, mineral, and animal resources, unless otherwise provided for in the grant.

(C)     BIA may treat any provision of a grant that violates Federal law as a violation of the grant.

(D)     If historic properties, archeological resources, human remains, or other cultural items not previously reported are encountered during the course of any activity associated with this grant,

5

all activity in the immediate vicinity of the properties, resources, remains, or items will cease and the Grantee will contact BIA and the Nation to determine how to proceed and how to conduct appropriate disposition in accordance with the IFT Final Environmental Assessment Best Management Practices.

(E)  Grantee must:

**(i)** Construct and maintain improvements within the right-of-way in a professional manner consistent with industry standards;

**(ii)** Pay promptly all damages and compensation determined by the BIA to be due the Nation and authorized users and occupants of land as a result of the granting, construction, and maintenance of the right-of-way;

**(iii)** Restore the land as nearly as may be possible to its original condition upon the completion of construction;

**(iv)** Clear and keep clear the land within the right-of-way, to the extent compatible with the purpose of the right-of-way, and dispose of all vegetative and other material cut, uprooted, or otherwise accumulated during the construction and maintenance of the project;

**(v)** Comply with all laws as outlined herein at Section 8 and obtain all required permits;

**(vi)** Not commit waste;

**(vii)** Operate, repair and maintain improvements consistent with the right-of-way grant;

**(viii)** Build and maintain necessary and suitable crossings for all roads and trails that intersect the improvements constructed, maintained, or operated under the right-of-way;

**(ix)** Restore the land to its original condition, as much as reasonably possible, at the end of the right-of-way term, or any renewal term, or upon cancellation or termination of the right-of-way;

**(x)** At all times keep the BIA, and the Nation, informed of the Grantee's address;

**(xi)** Refrain from interfering with the landowner's use of the land, provided that the landowner's use of the land is not inconsistent with the right-of-way, however, as noted above, tribal members are not authorized to access or use the land within the fenced perimeter of the IFT tower sites except as provided herein;

**(xii)** Comply with the following due diligence requirements: Grantee will provide the Nation's Realty Office, Roads Program, Environmental Protection Office, Wildlife and Vegetation Management Program ("WVMP"), Tribal Historic Preservation Office ("THPO"), Chukut Kuk District, and Gu Vo District with construction schedules and scopes of work for the two-phased construction process associated with the rights-of-way: (1) construction of roads and preparation of tower sites followed by (2) installation of towers and the technology on the towers.  Grantee shall complete construction of any permanent improvements within the schedule specified in the right-of-way grant or general schedule of construction.  Given the inherent uncertainties and delays associated with construction activities, such as weather delays, unforeseen site conditions, and protests related to the federal procurement process, Grantee may need to amend the construction schedules with the Nation's written consent to account for such delay and increased construction time.  Grantee shall complete construction of any permanent improvements within the schedule specified in the right-of-way grant or general schedule of construction, or as amended by the parties.  If construction does not occur, or is not

6

expected to be completed, within the time period specified, the Grantee must provide the Nation's Realty Office and BIA with an explanation of good cause as to the nature of any delay, the anticipated date of construction of facilities, and evidence of progress toward commencement of construction.  The Nation shall consent to construction schedule amendments for delays that are beyond Grantee's control, and such delays shall not be a basis for cancellation, termination, or any other remedy.  The Nation shall not unreasonably withhold its consent to a construction schedule amendment, shall provide Grantee with a written explanation for denying any schedule amendment, and will meet and confer with Grantee in an effort to resolve any schedule disputes.  If the Nation does not provide a written response to Grantee's proposed construction schedule amendment within 30 days of receipt by the Nation, the amendment will be deemed approved.

(F)    Indian Preference. To the extent permitted by federal procurement statutes and regulations, Grantee and its contractors and agents shall provide Indian preference in accordance with 13 Tohono O'odham Code Chapter 1 – Tribal Employment Rights.

10.  **ENCROACHMENT.**  Grantee may not unreasonably withhold its consent for a new right-of-way within its existing right-of-way that does not interfere with the use or purpose of its right-of-way. The Nation understands that due to the nature of the activity at the IFT tower site that Grantee may withhold its consent for a new right-of-way over, under or across an IFT tower site.

11.  **PERMANENT IMPROVEMENTS.**   Grantee **shall** be the owner of any permanent improvements constructed during the term of the Grant, including any renewal term.

12. **REMOVAL OF PERMANENT IMPROVEMENTS.**  Within 180 days after the end of the term or any renewal term, or cancellation or termination of the right-of-way, Grantee will remove all sensitive equipment, including but not limited to technological components, permanent improvements, appurtenances, fixtures and equipment placed within the right-of-way; except that the Nation may agree, by Legislative Council resolution and with the express consent of the Grantee, to take possession of and title to some or all of the permanent improvements, including some or all of the sensitive equipment.

13.  **AMENDMENT**.  This grant may not be amended except as provided in  25 CFR 169.204 - 169.206.

14.  **ASSIGNMENT.** This grant m a y  not  be assigned __without__ applicable consent and BIA approval and within 30 days, a copy of the assignment and supporting documents will be sent to BIA for recording in the LTRO.  As Grantee is a Department/Agency of the United States, a change in the name of the Department/Agency or a transition of this border security function to another Department/Agency is not considered an Assignment and does not require consent of the Nation or approval of the BIA.

15.  **MORTGAGE.**  As Grantee is a Department/Agency of the United States, this grant may not  be mortgaged.

16.  **EFFECTIVE DATE.**  Grant will be effective on the date it is approved.  The Grantee's

obligations are triggered on __(date)__ (if applicable).

17. **REMEDIES.**  Any disputes regarding violations, abandonment, or non-use may be addressed in accordance with 25 CFR 169, Subpart F, as may be amended.

18.  **BINDING EFFECT.**  The condition for this grant shall extend to and be binding upon and shall inure to the benefit of the successors of the Grantee.

19. **USE OF TOWERS BY THE NATION.**  The Grantee may, by separate written agreement and on terms mutually agreeable to both parties, allow for the Nation, at the Nation's sole expense, to operate, and maintain public safety communications equipment on the IFT towers provided that certain issues, including but not limited to, access to the site, impact on construction warranties, and compatibility with the Grantee's use of the site, can be resolved. Prior to entering into any such agreement, Grantee would need to verify that the installation of such public safety communications equipment would not impact the structural integrity of the IFT towers, would not interfere with Grantee operations and the operation and use of the IFT system or successor technologies, would not impact warranties running in favor of Grantee with respect to the towers and IFT system or successor technologies, or result in any cost or liability to Grantee. Except as otherwise provided in this section, Grantee shall not permit any person or entity other than Grantee's employees, contractors, or agents to install, operate, or maintain equipment or technology on the IFT towers or within the right-of-way without the Nation's advance consent as authorized by Legislative Council resolution.

20.  **EXCLUSION ZONES.**

(A)    The Nation may request the creation of geographic zones within the boundaries of the Nation or within traditional Tohono O'odham territories (i.e., land directly south of the international border with Mexico) that are temporarily excluded from coverage of the Integrated Fixed Tower System deployed on the Nation. Such zones shall be referred to as "Exclusion Zones." All requests for the creation of an Exclusion Zone pursuant to subsections B and C below shall be submitted in writing by the Nation's Department of Public Safety executive director and directed to the Tucson Sector Chief Patrol Agent and Tucson Sector Tribal Liaison.

(B)    All requests for the creation of an Exclusion Zone for funerals, wakes, burials, traditional ceremonies and practices, sacred deer hunts and reburial ceremonies shall by submitted with as much advance notice as possible.

(C)    All other requests for the creation of an Exclusion Zone that do not fit within subsection B above shall be submitted at least 7 days in advance of the requested exclusion start date.

(D)    All requests for the creation of an Exclusion Zone pursuant subsections B and C above shall include the following information: (1) a geographic description of the area proposed for exclusion; (2) the proposed limited duration of the exclusion; (3) the justification for seeking the exclusion; and (4) a point of contact for questions or additional information; provided that sensitive information, e.g., reburial location, may be provided by the Department of Public Safety executive director to the Tucson Sector Chief Patrol Agent and Tucson Sector Tribal

Liaison by a separate communication.

(F)   Decisions on all requests for the creation of an Exclusion Zone will be made in writing by the Tucson Sector Chief Patrol Agent, or his designee.  Decisions will be directed to the Nation's Department of Public Safety executive director.

   i.  The Tucson Sector Chief Patrol Agent shall have complete discretion to approve or deny any request for the creation of an Exclusion Zone.  The decisions of the Tucson Sector Chief Patrol Agent are not subject to administrative or judicial review however such decisions must set forth the reasons for a denial, if issued.

   ii.  Decisions on requests submitted under subsection B and C shall be made within 72 hours of receiving such requests.

(G)   Requests for the creation of permanent or indefinite Exclusion Zones will not be considered by the Tucson Sector Chief Patrol Agent.  Accordingly, the Tucson Sector Chief Patrol Agent will not issue decisions on such requests.

(H)   The Nation, Tucson Sector Chief Patrol Agent, and Tucson Sector Tribal Liaison shall meet annually to review the implementation of this Section 20 and determine whether it should be amended in accordance with 25 CFR 169.204-169.206.

21.  **CONSENT.**  The Nation consented to this right-of-way grant in Legislative Council Resolution No. 18-xxx [insert resolution number].  This Grant of Right-of-Way shall remain in effect notwithstanding any subsequent Legislative Council resolutions revoking or modifying such consent; provided that the grant may be cancelled or terminated in accordance with the provisions of 25 C.F.R. Part 169 and this grant.

22.  **USE OF INFORMATION.**  Grantee will, as necessary, share information provided by or obtained from the IFT system or successor technologies with other entities, including but not limited to, other federal agencies, and the Tohono O'odham Police Department may request such information for law enforcement purposes subject to nondisclosure agreements or other conditions set by Grantee.

23. **ADDITIONAL CONDITIONS OR RESTRICTIONS.**  This grant incorporates by reference the terms, conditions, and restrictions set out in the following, additional right-of-way documents that are incorporated by this reference:

(A)   the Agreement Between the Tohono O'odham Nation and United States Customs and Border Protection for Conditions for Grants of Easement for Rights-of-Way for Integrated Fixed Tower Project, Access and Approach Roads, and Traditional Northern Road.

(B)   the Final Environmental Assessment For Integrated Fixed Towers On The Tohono O'odham Nation In The Ajo And Casa Grande Stations' Areas Of Responsibility U.S. Border Patrol Tucson Sector, Arizona U.S. Customs And Border Protection Department Of Homeland Security Washington, D.C. ("IFT Final Environmental Assessment").

(C)    Tohono O'odham Legislative Council Resolution No. 18-xxx.

24.   **FIVE-YEAR REVIEW.**  Grantee and the Nation, in consultation with affected members, communities, and districts, shall conduct a detailed review of the IFT project every five years, including for compliance with these conditions, additional right-of-way documents, and all applicable laws and regulations.  To the extent these five-year reviews include potential compliance issues, Grantee and the Nation agree to work cooperatively to remedy potential compliance issues with the understanding that the 25 year right-of-way will remain in effect in accordance with its terms and applicable laws and regulations, including 25 C.F.R. Part 169.

25.  **ADDITIONAL USES OF NATION'S LANDS.**  The grants of easement for rights of way for the IFT project towers, approach and access roads, and Traditional Northern Road and Border Fence Road are designed as part of integrated strategy to provide CBP with operational control of the international boundary.  It is therefore in the interests of the Nation and CBP to negotiate additional, necessary grants of easement for rights of way, leases, authorizations, or agreements as necessary to authorize CBP's use of Nation's lands outside the IFT rights-of-way.

The Nation is a sovereign, federally recognized Indian tribe organized pursuant to its Constitution adopted in accordance with Section 16 of the Indian Reorganization Act of June 18, 1934 (48 Stat. 984; 25 U.S.C. § 476) and the unallotted lands of the Tohono O'odham Nation "are a valuable public resource and shall be held as national lands forever." Constitution of the Tohono O'odham Nation, Article XVI, Section 1.  The Nation's Legislative Council is vested with control and management thereof and uses of unallotted national lands must be approved by Legislative Council resolution, Nation's law, or a lease or other agreement authorized or approved by the Legislative Council, Constitution, Article XVI, Section 1; Article VI, Section 1(f) and (j).

The Nation and Grantee therefore agree to negotiate in good faith a road use, maintenance, and repair agreement and other necessary grants, leases, authorizations, or agreements for uses of Nation's lands outside the IFT rights-of-way; provided that the failure to obtain such additional authorizations or reach such agreements shall not be grounds for cancellation or termination of the IFT project rights-of-way.

**IN WITNESS WHEREOF, the Tohono O'odham Nation and United States Customs and Border Protection have duly executed this Agreement as of the day and year indicated below.**

**FOR THE TOHONO O'ODHAM NATION**

_____          _____
  Edward D. Manuel, Chairman                              Date

**Approved as to form:**

_____          _____
Chadwick Smith, Attorney General                         Date

**FOR U.S. DEPARTMENT OF HOMELAND SECURITY**
**CUSTOMS AND BORDER PROTECTION**
**BORDER PATROL TUCSON SECTOR**

_____          _____
Rodolfo Karisch, Chief Patrol Agent                      Date

11

# ATTACHMENT C

 **Outlook**

## RE: IFT terms

**From** Rosalynde Alexander <Rosalynde.Alexander@tonation-nsn.gov>

**Date** Thu 5/17/2018 10:16 AM

**To** 'FELTS, MICHAEL F (OCC)' <MICHAEL.F.FELTS@CBP.DHS.GOV>

**Cc** BEAN, ADAM M (OCC) <adam.m.bean@cbp.dhs.gov>; Michael Ehlerman <Michael.Ehlerman@tonation-nsn.gov>

📎 2 attachments (121 KB)
Integrated Fixed Tower and TNR agreement 041118 5 (TON edits 05-17-18).docx; IFT towers and roads BIA Right of Way Template TON CLEAN WITH COMMENTS 041118 2 (TON Edits 05-17-18).docx;

Dear Mike,

Attached, please find the edits we discussed by phone regarding removal of references to the Roosevelt Reservation in the Agreement and edits to Section 4(C), Termination, to the Grant document.  The edits to the Grant document, regarding termination, are also reflected in the Agreement.  We look forward to your written response to the Nation's offer letter dated April 19, 2018.  Please include any edits you have to the attached within such written response.

Thank you,

Rosalynde Alexander
Assistant Attorney General
Tohono O'odham Nation

TEL: 520-383-3410
FAX: 520-383-2689

*This message and any included attachments are from the Tohono O'odham Nation Office of Attorney General and are intended only for the addressee(s). The information contained herein is confidential and may be attorney work product and/or subject to the attorney-client privilege.  Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful.  If you have received this message in error, or have reason to believe you are not authorized to receive it, please promptly delete this message and notify the sender by e-mail.  Thank you for your assistance.*

**From:** FELTS, MICHAEL F (OCC) [mailto:MICHAEL.F.FELTS@CBP.DHS.GOV]
**Sent:** Wednesday, May 16, 2018 2:29 AM
**To:** Michael Ehlerman
**Cc:** Rosalynde Alexander; BEAN, ADAM M (OCC)
**Subject:** RE: IFT terms

Mike-

At this time, we do not have redlines ready to share.  As noted previously, we are currently working on briefing senior leadership on the cancellation and termination clauses and the risks associated with those clauses.  I will keep you updated on status and will share redlines at the appropriate time.

With respect to the cancellation/termination clauses, checking to see the status of the clause related to the termination process.

Thanks-

Mike

Michael Felts
Senior Attorney
Office of Assistant Chief Counsel, Indianapolis
Customs and Border Protection
ph. (317) 614-4411
michael.felts@dhs.gov

*This communication might contain communications between attorney and client, communications that are part of the agency deliberative process, or attorney-work product, all of which are privileged and not subject to disclosure outside the agency or to the public. Please consult with the Office of Assistant Chief Counsel-Indianapolis, U.S. Customs and Border Protection before disclosing any information contained in this email.*

**From:** Michael Ehlerman [mailto:Michael.Ehlerman@tonation-nsn.gov]
**Sent:** Tuesday, May 15, 2018 7:15 PM
**To:** FELTS, MICHAEL F (OCC) <MICHAEL.F.FELTS@CBP.DHS.GOV>
**Cc:** Rosalynde Alexander <Rosalynde.Alexander@tonation-nsn.gov>; BEAN, ADAM M (OCC) <adam.m.bean@cbp.dhs.gov>
**Subject:** RE: IFT terms

Dear Mike,

Does CBP have any redlines it's able to share?  Thanks.

Mike

P. Michael Ehlerman, Legislative Attorney
Legislative Attorney's Office
Tohono O'odham Legislative Branch
P.O. Box 837
Sells, Arizona 85634

520.383.5260 x15122 (office)
520.240.3473 (cell)

This communication may contain privileged and confidential information protected by the attorney-client relationship and is intended solely for the use of the individual or entity named above.  If you are not the

intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited.  If you have received this communication in error, please notify the Legislative Attorney's Office immediately by telephone at (520) 383-5260 or reply by e-mail and delete or discard the above message.  Thank you.

---

**From:** FELTS, MICHAEL F (OCC) [mailto:MICHAEL.F.FELTS@CBP.DHS.GOV]
**Sent:** Monday, May 07, 2018 1:31 PM
**To:** Michael Ehlerman <Michael.Ehlerman@tonation-nsn.gov>
**Cc:** Rosalynde Alexander <Rosalynde.Alexander@tonation-nsn.gov>; BEAN, ADAM M (OCC) <adam.m.bean@cbp.dhs.gov>
**Subject:** IFT terms

Hi Mike-

Thanks for the conversation on April 27, 2018.  We continue to work on redlines to the latest draft you submitted.  As you know, however, CBP remains especially concerned about the cancellation and termination provisions in light of the significant financial investment in the IFT program.  To that end, we are in the process of preparing to brief CBP leadership on the status of negotiations, including the Nation's position with respect to cancellation/termination.

Finally, we look forward to receiving the proposed language regarding the termination process as noted in our call on the 27th.

Thanks-

Mike

Michael Felts
Senior Attorney
Office of Assistant Chief Counsel, Indianapolis
Customs and Border Protection
ph. (317) 614-4411
michael.felts@dhs.gov

*This communication might contain communications between attorney and client, communications that are part of the agency deliberative process, or attorney-work product, all of which are privileged and not subject to disclosure outside the agency or to the public. Please consult with the Office of Assistant Chief Counsel-Indianapolis, U.S. Customs and Border Protection before disclosing any information contained in this email.*