APPEAL,TYPE−D

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: 1:26−cv−02127−RJL

TOHONO O'ODHAM NATION v. MULLIN et al
Assigned to: Judge Richard J. Leon
Demand: $0
Cause: 28:1331 Fed. Question

Date Filed: 06/16/2026
Jury Demand: None
Nature of Suit: 240 Torts to Land
Jurisdiction: U.S. Government Defendant

**Plaintiff**

**TOHONO O'ODHAM NATION**
*a federally recognized Indian tribe*

represented by

**David A Giampetroni**
KANJI & KATZEN, PLLC
PO Box 3971
Ann Arbor, MI 48106
734−769−5400
Email: dgiampetroni@kanjikatzen.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Howard Shanker**
TOHONO O'ODHAM NATION
Office of Attorney General
PO Box 830
Sells, AZ 85634
520−383−3410
Email: howard.shanker@tonation−nsn.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Logan Takao Cooper**
TOHONO O'ODHAM NATION
Office of Attorney General
PO Box 830
Sells, AZ 85634
520−954−9146
Email: logan.cooper@tonation−nsn.gov
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Philip H Tinker**
KANJI & KATZEN, PLLC
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
206−344−8100
Email: ptinker@kanjikatzen.com
*ATTORNEY TO BE NOTICED*

**Riyaz A. Kanji**
KANJI & KATZEN, PLLC

P.O. Box 3971
Ann Arbor, MI 48106
734−769−5400
Email: rkanji@kanjikatzen.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**MARKWAYNE MULLIN**
*in his official capacity as Secretary of U.S. Department of Homeland Security*

represented by

**Stacy R. Stoller**
DOJ−ENRD
950 Pennsylvania Ave NW
Washington, DC 20530
202−598−3555
Email: stacy.stoller@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
DOJ−Enrd
Environment and Natural Resources Division
950 Pennsylvania Ave NW
Washington, DC 20530
202−718−0703
Email: adam.gustafson@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Andrew Block**
DOJ−OASG
Office of the Associate Attorney General
950 Pennsylvania Ave., NW
Washington, DC 20530
202−372−7565
Email: andrew.block@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Bradley Thomas Craigmyle**
DOJ−Enrd
950 Pennsylvania Avenue NW
Washington, DC 20530
202−532−3150
Email: bradley.craigmyle@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
U.S. DEPARTMENT OF JUSTICE
ENRD
P.O. Box 7611
Washington, DC 20044−7611
(202) 305−0470

Email: marissa.piropato@usdoj.gov
*ATTORNEY TO BE NOTICED*

**Defendant**

**RODNEY SCOTT**
*in his official capacity as Commissioner of U.S. Customs and Border Protection*

represented by **Stacy R. Stoller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew Block**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Thomas Craigmyle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Defendant**

**ROSARIO VASQUEZ**
*in his official capacity as Chief of U.S. Border Patrol*

represented by **Stacy R. Stoller**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam R.F. Gustafson**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Andrew Block**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Bradley Thomas Craigmyle**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Marissa Ann Piropato**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Amicus**

**WARREN PETERSEN**

represented by **S. Lee Whitesell**
FUSION LAW
3515 Urban Woods Trail

Houston, TX 77008
856−364−6090
Email: slw@fusion.law
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Amicus**

**STEVE MONTENEGRO** represented by **S. Lee Whitesell**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/16/2026 | 1 | COMPLAINT against MARKWAYNE MULLIN, RODNEY SCOTT, ROSARIO VASQUEZ ( Filing fee $ 405 receipt number ADCDC−12491722) filed by TOHONO O'ODHAM NATION. (Attachments: # 1 Civil Cover Sheet, # 2 Summons issued for Markwayne Mullin, # 3 Summons issued for Rodney Scott, # 4 Summons issued for Rosario Vasquez, # 5 Summons issued for U.S. Attorney, # 6 Summons issued for U.S. Attorney General)(Kanji, Riyaz) (Entered: 06/16/2026) |
| 06/16/2026 | 2 | NOTICE of Appearance by Riyaz A. Kanji on behalf of TOHONO O'ODHAM NATION (Kanji, Riyaz) (Entered: 06/16/2026) |
| 06/17/2026 | 3 | MOTION for Preliminary Injunction by TOHONO O'ODHAM NATION. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Chairman Verlon M. Jose, # 3 Declaration of Christopher T. Senseney, PhD. P.E., # 4 Declaration of Kendall Jose, # 5 Declaration of James Cook, # 6 Declaration of Samuel Fayuant, # 7 Declaration of Eldellda Francisco, # 8 Declaration of Laiken Jordahl, # 9 Declaration of Gary Nabhan, Ph.D, # 10 Declaration of Rebecca Ortega, # 11 Declaration of Thomasa Rivas, # 12 Declaration of Myles Traphagen, # 13 Declaration of John Robert Welch, Ph.D, # 14 Declaration of Mary Lucy Zazueta, # 15 Declaration of Riyaz A. Kanji, # 16 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/17/2026) |
| 06/17/2026 | | Case Assigned to Judge Richard J. Leon. (zmtm) (Entered: 06/17/2026) |
| 06/17/2026 | 4 | SUMMONS (5) Issued Electronically as to All Defendants, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zmtm) (Entered: 06/17/2026) |
| 06/17/2026 | 5 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− David A. Giampetroni, Filing fee $ 100, receipt number ADCDC−12493101. Fee Status: Fee Paid. by TOHONO O'ODHAM NATION. (Attachments: # 1 Declaration of David A. Giampetroni in Support, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/17/2026) |
| 06/17/2026 | 6 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Philip H. Tinker, Filing fee $ 100, receipt number ADCDC−12493127. Fee Status: Fee Paid. by TOHONO O'ODHAM NATION. (Attachments: # 1 Declaration of Philip H. Tinker, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/17/2026) |
| 06/17/2026 | 7 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Christopher C. Miller, Filing fee $ 100, receipt number ADCDC−12493137. Fee Status: Fee Paid. by |

| | | |
|---|---|---|
| | | TOHONO O'ODHAM NATION. (Attachments: # 1 Declaration of Christopher C. Miller in Support, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/17/2026) |
| 06/17/2026 | 8 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Howard M. Shanker, Filing fee $ 100, receipt number ADCDC−12493175. Fee Status: Fee Paid. by TOHONO O'ODHAM NATION. (Attachments: # 1 Declaration of Howard M. Shanker in Support, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/17/2026) |
| 06/18/2026 | 9 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Logan Takao Cooper, Filing fee $ 100, receipt number ADCDC−12495858. Fee Status: Fee Paid. by TOHONO O'ODHAM NATION. (Attachments: # 1 Declaration of Logan Takao Cooper in Support, # 2 Exhibit Certificate of Good Standing, # 3 Text of Proposed Order)(Kanji, Riyaz) (Entered: 06/18/2026) |
| 06/18/2026 | | MINUTE ORDER. Regarding plaintiff's 3 Motion for a Preliminary Injunction, the parties are hereby ORDERED to confer and file a joint status report proposing a briefing schedule for plaintiff's motion by June 23, 2026. Per Local Civil Rule 65.1(d), the Court finds that a later hearing date will not prejudice the parties. Accordingly, the Court will hold a hearing on the motion on July 22, 2026 at 4:00 PM in Courtroom 18 (In Person) before Judge Richard J. Leon. SO ORDERED. Signed by Judge Richard J. Leon on 6/18/2026. (lcrjl2) (Entered: 06/18/2026) |
| 06/22/2026 | 10 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 6/18/2026. Answer due for ALL FEDERAL DEFENDANTS by 8/17/2026. (Kanji, Riyaz) (Entered: 06/22/2026) |
| 06/23/2026 | | MINUTE ORDER. Upon consideration of the 5 6 7 8 9 Motions for Admission of Attorney Pro Hac Vice, it is hereby ORDERED that the motions are GRANTED. It is further ORDERED that David A. Giampetroni, Philip H. Tinker, Christopher C. Miller, Howard M. Shanker, and Logan Takao Cooper be, and hereby are, admitted pro hac vice in this case. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. SO ORDERED. Signed by Judge Richard J. Leon on 6/23/2026. (lcrjl2) (Entered: 06/23/2026) |
| 06/23/2026 | 11 | Joint STATUS REPORT by TOHONO O'ODHAM NATION. (Kanji, Riyaz) (Entered: 06/23/2026) |
| 06/24/2026 | | MINUTE ORDER. Regarding the parties' 11 Joint Status Report, it is hereby ORDERED that the following briefing schedule shall apply: Defendants' response to plaintiff's 3 Motion for Preliminary Injunction due July 7, 2026. Plaintiff's reply due July 14, 2026. SO ORDERED. Signed by Judge Richard J. Leon on 6/24/2026. (lcrjl2) (Entered: 06/24/2026) |
| 06/25/2026 | 12 | NOTICE of Appearance by David A Giampetroni on behalf of TOHONO O'ODHAM NATION (Giampetroni, David) (Entered: 06/25/2026) |
| 06/25/2026 | 13 | NOTICE of Appearance by Philip H Tinker on behalf of TOHONO O'ODHAM NATION (Tinker, Philip) (Entered: 06/25/2026) |
| 06/25/2026 | 14 | NOTICE of Appearance by Howard Shanker on behalf of TOHONO O'ODHAM NATION (Shanker, Howard) (Entered: 06/25/2026) |
| 06/25/2026 | 15 | |

| | | |
|---|---|---|
| | | NOTICE of Appearance by Logan Takao Cooper on behalf of TOHONO O'ODHAM NATION (Takao Cooper, Logan) (Entered: 06/25/2026) |
| 07/07/2026 | 16 | Unopposed MOTION for Leave to File Amicus Brief *by Arizona Senate President Warren Petersen and Arizona Speaker of the House of Representatives Steve Montenegro in Support of Defendants and in Opposition to Plaintiffs Motion for Preliminary Injunction* by WARREN PETERSEN, STEVE MONTENEGRO. (Attachments: # 1 Proposed Brief, # 2 Text of Proposed Order Proposed Order)(Whitesell, S.) (Entered: 07/07/2026) |
| 07/07/2026 | 17 | NOTICE of Appearance by Stacy R. Stoller on behalf of All Defendants (Stoller, Stacy) (Entered: 07/07/2026) |
| 07/07/2026 | 18 | Memorandum in opposition to re 3 MOTION for Preliminary Injunction *by Federal Defendants* filed by MARKWAYNE MULLIN. (Attachments: # 1 Affidavit Hollinder Declaration, # 2 Affidavit Enriquez Declaration, # 3 Exhibit Attachment A − Roosevelt Proclamation, # 4 Exhibit Attachment B − 1937 Act, # 5 Exhibit Attachment C − 1927 Act, # 6 Exhibit Attachment D − Res. No. 04−095, # 7 Exhibit M−Opinion 27656, # 8 Text of Proposed Order)(Stoller, Stacy) (Entered: 07/07/2026) |
| 07/08/2026 | 19 | NOTICE *of Filing Corrected Memorandum (Dkt. # 18) in Opposition to Motion for Preliminary Injunction (Dkt. # 3)* by MARKWAYNE MULLIN re 18 Memorandum in Opposition, (Attachments: # 1 Exhibit Corrected Memorandum in Opposition to Plaintiff's Motion for Preliminary Injunction)(Stoller, Stacy) (Entered: 07/08/2026) |
| 07/08/2026 | | MINUTE ORDER. Upon consideration of the 16 Motion for Leave to File Amicus Brief, it is hereby ORDERED that the Motion is GRANTED. The proposed amicus brief attached as Exhibit 1 to the 13 Motion is deemed filed with the Court upon entry of this order. SO ORDERED. Signed by Judge Richard J. Leon on 7/8/2026. (lcrjl2) (Entered: 07/08/2026) |
| 07/08/2026 | 20 | AMICUS BRIEF by STEVE MONTENEGRO, WARREN PETERSEN. (mg) (Entered: 07/08/2026) |
| 07/09/2026 | 21 | Unopposed MOTION for Protective Order by MARKWAYNE MULLIN. (Attachments: # 1 Text of Proposed Order)(Stoller, Stacy) (Entered: 07/09/2026) |
| 07/09/2026 | 22 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MARKWAYNE MULLIN (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Affidavit, # 2 Text of Proposed Order)(Stoller, Stacy) (Entered: 07/09/2026) |
| 07/14/2026 | 23 | PROTECTIVE ORDER. See attached for details. Signed by Judge Richard J. Leon on 7/13/2026. (lcrjl2) Modified on 7/14/2026 (zcll). (Entered: 07/14/2026) |
| 07/14/2026 | | MINUTE ORDER granting 22 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Richard J. Leon on 7/14/2026. (lcrjl2) (Entered: 07/14/2026) |
| 07/14/2026 | 24 | SEALED DOCUMENT (AFFIDAVIT) filed by MARKWAYNE MULLIN. (This document is SEALED and only available to authorized persons.)(mg) (Entered: 07/14/2026) |
| 07/14/2026 | 25 | REPLY to opposition to motion re 3 Motion for Preliminary Injunction,, filed by TOHONO O'ODHAM NATION. (Kanji, Riyaz) (Entered: 07/15/2026) |
| 07/14/2026 | 30 | |

| | | |
|---|---|---|
| | | ENTERED IN ERROR.....SEALED DOCUMENT (DECLARATION) filed by MARKWAYNE MULLIN. (This document is SEALED and only available to authorized persons.)(mg) Modified on 7/20/2026, filed at docket entry 24 (mg). (Entered: 07/20/2026) |
| 07/15/2026 | 26 | DECLARATION *of Paul Michael Ehlerman* by TOHONO O'ODHAM NATION re 25 Reply to opposition to Motion. (Kanji, Riyaz) (Entered: 07/15/2026) |
| 07/15/2026 | 27 | DECLARATION *of Riyaz A. Kanji* by TOHONO O'ODHAM NATION re 25 Reply to opposition to Motion. (Kanji, Riyaz) (Entered: 07/15/2026) |
| 07/15/2026 | 28 | Unopposed MOTION to File Declarations in Reply in Support of Motion for Preliminary Injunction by TOHONO O'ODHAM NATION. (Attachments: # 1 Text of Proposed Order)(Kanji, Riyaz) (Entered: 07/15/2026) |
| 07/15/2026 | 29 | NOTICE *of filing of Appendix A* by TOHONO O'ODHAM NATION re 25 Reply to opposition to Motion (Attachments: # 1 Appendix B)(Kanji, Riyaz) (Entered: 07/15/2026) |
| 07/20/2026 | 31 | NOTICE of Appearance by Adam R.F. Gustafson on behalf of All Defendants (Gustafson, Adam) (Entered: 07/20/2026) |
| 07/20/2026 | 32 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by TOHONO O'ODHAM NATION (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Sealed Motion to Strike Declaration of Benjamin S. Hollinder, # 2 Declaration of Paul Michael Ehlerman, # 3 Text of Proposed Order re Sealed Motion to Strike Declaration of Benjamin S. Hollinder, # 4 Text of Proposed Order re Unopposed Motion for Leave to File Motion to Strike the Declaration of Benjamin S. Hollinder)(Kanji, Riyaz) (Entered: 07/20/2026) |
| 07/21/2026 | | MINUTE ORDER. Upon consideration of plaintiff's 28 Motion to File Declarations in Reply in Support of Motion for Preliminary Injunction, it is hereby ORDERED that the motion is GRANTED. SO ORDERED. Signed by Judge Richard J. Leon on 7/21/2026. (lcrjl2) (Entered: 07/21/2026) |
| 07/21/2026 | 33 | NOTICE of Appearance by Bradley Thomas Craigmyle on behalf of All Defendants (Craigmyle, Bradley) (Entered: 07/21/2026) |
| 07/22/2026 | 34 | NOTICE of Appearance by Andrew Block on behalf of All Defendants (Block, Andrew) (Entered: 07/22/2026) |
| 07/22/2026 | | Minute Entry for Motion Hearing held before Judge Richard J. Leon on July 22, 2026. Oral arguments submitted on Plaintiff's 3 Motion for Preliminary Injunction. The Court takes the matter under advisement. Upon receipt of the transcript of this hearing, each side may have one week to submit supplemental pleadings in light of today's hearing. These submissions shall not exceed ten pages in length. (Court Reporter: Rebecca Monroe.) (hmj) (Entered: 07/22/2026) |
| 07/23/2026 | | MINUTE ORDER. Per the Court's July 22, 2026 Order, and given the parties' receipt of the preliminary injunction hearing transcript on July 23, 2026, it is hereby ORDERED that the parties shall submit supplemental briefs by 5:00 PM on July 30, 2026. SO ORDERED. Signed by Judge Richard J. Leon on 7/23/2026. (lcrjl1) (Entered: 07/23/2026) |
| 07/28/2026 | | MINUTE ORDER granting 32 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Richard J. Leon on 7/28/2026. (lcrjl2) (Entered: 07/28/2026) |

| | | |
|---|---|---|
| 07/28/2026 | 35 | SEALED MOTION to Strike filed by TOHONO O'ODHAM NATION. (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Declaration, # 2 Text of Proposed Order)(mg) (Entered: 07/29/2026) |
| 07/30/2026 | 36 | NOTICE of Appearance by Marissa Ann Piropato on behalf of All Defendants (Piropato, Marissa) (Entered: 07/30/2026) |
| 07/30/2026 | 37 | SUPPLEMENTAL MEMORANDUM to re Order,, Scheduling Order, filed by TOHONO O'ODHAM NATION. (Attachments: # 1 Appendix)(Kanji, Riyaz) (Entered: 07/30/2026) |
| 07/30/2026 | 38 | MEMORANDUM re Order,, Scheduling Order, by MARKWAYNE MULLIN, RODNEY SCOTT, ROSARIO VASQUEZ. (Attachments: # 1 Affidavit)(Piropato, Marissa) (Entered: 07/30/2026) |
| 07/30/2026 | 39 | ERRATA *Declaration* by MARKWAYNE MULLIN, RODNEY SCOTT, ROSARIO VASQUEZ re Order,, Scheduling Order,. (Attachments: # 1 Exhibit Supplemental Memorandum, # 2 Exhibit Corrected Declaration)(Piropato, Marissa) (Entered: 07/30/2026) |
| 08/03/2026 | 40 | SEALED MOTION FOR LEAVE TO FILE DOCUMENT UNDER SEAL filed by MARKWAYNE MULLIN, RODNEY SCOTT, ROSARIO VASQUEZ (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Text of Proposed Order, # 2 Exhibit DEFENDANTS SEALED MEMORANDUM OF POINTS AND AUTHORITIES, # 3 Exhibit Declaration, # 4 Text of Proposed Order)(Piropato, Marissa) (Entered: 08/03/2026) |
| 08/06/2026 | | MINUTE ORDER granting 40 Sealed Motion for Leave to File Document Under Seal. Signed by Judge Richard J. Leon on 8/6/2026. (lcrjl2) (Entered: 08/06/2026) |
| 08/06/2026 | 41 | NOTICE *of United States' Planned Activity on Tohono O'odham Reservation* by TOHONO O'ODHAM NATION (Attachments: # 1 Exhibit Email)(Kanji, Riyaz) (Entered: 08/06/2026) |
| 08/06/2026 | 42 | SEALED OPPOSITION filed by MARKWAYNE MULLIN, RODNEY SCOTT, ROSARIO VASQUEZ re 35 Sealed Motion (Attachments: # 1 Declaration)(mg) (Entered: 08/07/2026) |
| 08/10/2026 | 43 | TRANSCRIPT OF PROCEEDINGS before Judge Richard J. Leon held on 07/22/2026; Page Numbers: 1 through 47. Date of Issuance:8/10/2026. Court Reporter/Transcriber Rebecca Monroe, email: rebecca_monroe@dcd.uscourts.gov, Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi−page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty−one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov. |

| | | |
|---|---|---|
| | | Redaction Request due 8/31/2026. Redacted Transcript Deadline set for 9/10/2026. Release of Transcript Restriction set for 11/8/2026.(Monroe, Rebecca) (Entered: 08/10/2026) |
| 08/12/2026 | 44 | RESPONSE re 41 Notice by MARKWAYNE MULLIN, RODNEY SCOTT, ROSARIO VASQUEZ. (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Piropato, Marissa) Modified event on 8/27/2026 (mg). (Entered: 08/12/2026) |
| 08/14/2026 | 45 | MEMORANDUM OPINION. Signed by Judge Richard J. Leon on 8/13/2026. (lcrjl2) (Entered: 08/14/2026) |
| 08/14/2026 | 46 | ORDER denying 3 Motion for Preliminary Injunction. See attached for details. Signed by Judge Richard J. Leon on 8/13/2026. (lcrjl2) (Entered: 08/14/2026) |
| 08/14/2026 | 47 | MOTION for Extension of Time to File Answer re 1 Complaint, by MARKWAYNE MULLIN. (Attachments: # 1 Text of Proposed Order)(Stoller, Stacy) (Entered: 08/14/2026) |
| 08/17/2026 | | MINUTE ORDER. Upon consideration of defendants' 47 Unopposed Motion for Extension of Time, it is hereby ORDERED that the motion is GRANTED. Defendants shall answer or otherwise respond to the 1 Complaint by September 14, 2026. SO ORDERED. Signed by Judge Richard J. Leon on 8/17/2026. (lcrjl2) (Entered: 08/17/2026) |
| 08/26/2026 | 48 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 46 Order on Motion for Preliminary Injunction by TOHONO O'ODHAM NATION. Filing fee $ 605, receipt number ADCDC−12635578. Fee Status: Fee Paid. (Kanji, Riyaz) (Entered: 08/26/2026) |

**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOHONO O'ODHAM NATION,<br>a federally recognized Indian tribe,<br><br>*Plaintiff*,<br><br>v.<br><br>MARKWAYNE MULLIN, in his official capacity as Secretary of U.S. Department of Homeland Security; RODNEY SCOTT, in his official capacity as Commissioner of U.S. Customs and Border Protection; and ROSARIO VASQUEZ, in his official capacity as Chief of U.S. Border Patrol,<br><br>*Defendants*. | Case No. 26-cv-2127-RJL |

**NOTICE OF APPEAL**

Pursuant to Federal Rule of Appellate Procedure 3, notice is hereby given that Plaintiff Tohono O'odham Nation appeals to the United States Court of Appeals for the District of Columbia Circuit from the Order of this Court entered in the above-captioned matter on August 14, 2026 (Dkt. 46), in which this Court denied the Motion for Preliminary Injunction of the Tohono O'odham Nation (Dkt. 3).

Dated: August 26, 2026

Respectfully submitted,

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji, D.C. Bar 455165
David A. Giampetroni*
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

Philip H. Tinker*
KANJI & KATZEN, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com

Howard M. Shanker, D.C. Bar 426359*
Attorney General
Logan Takao Cooper*
Assistant Attorney General
TOHONO O'ODHAM NATION
P.O. Box 830
Sells, AZ 85634
Howard.Shanker@tonation-nsn.gov
Logan.Cooper@tonation-nsn.gov

*Counsel for Plaintiff Tohono O'odham Nation*

*Pro Hac Vice Admission

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2026, this document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

/s/ *Riyaz A. Kanji*
Riyaz A. Kanji

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| TOHONO O'ODHAM NATION,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Defendants. | Civil Case No. 26-2127 (RJL) |

**MEMORANDUM OPINION**

August 13th, 2026 [Dkt. #3]

For decades, plaintiff the Tohono O'odham Nation and the United States Government have worked together to secure a sixty-two mile stretch of the international border with Mexico. In 2004, the Tohono O'odham Nation agreed to construction of a vehicle barrier over most of the international border that stops vehicles—but not people—from crossing. The Government now plans to replace the vehicle barrier with a congressionally-authorized and funded border wall next to the Tohono O'odham Reservation. Plaintiff seeks a preliminary injunction to stop construction on grounds that the border wall will change the Reservation boundaries and will result in trespasses over the Reservation. Because plaintiff is unlikely to succeed on the merits of these claims, and because the remaining preliminary injunction factors favor the Government, I will **DENY** plaintiff's Motion for a Preliminary Injunction.

## BACKGROUND

### I. The United States-Mexico International Border

The international border between the United States and Mexico stretches for nearly 2,000 miles and spans four states—California, Arizona, New Mexico, and Texas.[1] Securing and maintaining control of such a lengthy and geographically varied border is a challenge, especially given the high volume of illegal entries and drug smuggling. For example, at the Arizona border from 2021 to 2026, the Government apprehended 1.3 million illegal aliens and seized thousands of pounds of illicit drugs, including over 3,475 pounds of fentanyl, 17,200 pounds of marijuana, and 11,750 pounds of methamphetamine. Decl. of Paul Enriquez ("Enriquez Decl.") [Dkt. #18-2] ¶ 10.

Congress has directed the Secretary of Homeland Security (the "Secretary") to "achieve and maintain operational control over" the United States-Mexico border, including through "physical infrastructure enhancements." Secure Fence Act of 2006, Pub. L. No. 109-367, § 2(a), 120 Stat. 2638, 2638 (codified at 8 U.S.C. § 1701 note). Congress has repeatedly passed legislation authorizing the Secretary to construct physical barriers at the border. *See, e.g.*, Omnibus Consolidated Appropriations Act, 1997, Pub. L. No. 104-208, § 102, 110 Stat. 3009, 3009-554 (1996) (codified at 8 U.S.C. § 1103 note and hereinafter referred to as the Illegal Immigration Reform and Immigrant Responsibility Act, or "IIRIRA"). Most recently, Congress appropriated $46 billion to U.S. Customs and Border Protection for, among other things, the "[c]onstruction, installation, or improvement

[1] Smart Wall Map, U.S. Customs & Border Protection, https://perma.cc/9LWK-6HEP (last accessed Aug. 10, 2026).

of new or replacement primary, waterborne, and secondary barriers." One Big Beautiful Bill Act, Pub. L. No. 119-21, tit. IX, sec. 90001, 139 Stat. 72, 358 (2025).

To fast-track border construction, Congress authorized the Secretary to "waive all legal requirements . . . necessary to ensure expeditious construction of the barriers and roads under this section." IIRIRA § 102(c)(1). Congress further limited federal courts' jurisdiction over "any action undertaken, or any decision made, by the Secretary" pursuant to IIRIRA's waiver authority. IIRIRA § 102(c)(2)(A). The statute permits only constitutional challenges to such "action[s]" or "decision[s]," and any legal challenges must be brought within sixty days. IIRIRA § 102(c)(2)(B), (C). On April 3, 2008, the Secretary issued a broad waiver of numerous environmental and procedural laws, including the Administrative Procedure Act, for projects "in the States of California, Arizona, New Mexico, and Texas." 73 Fed. Reg. 18293; *see also* 91 Fed. Reg. 45823, 45823 (July 21, 2026) (waiving numerous laws specifically for the Tucson 5 Project).

## II. The Tohono O'odham Nation

Plaintiff, the Tohono O'odham Nation ("plaintiff" or "the Nation"), is a "federally recognized Indian tribe with a government-to-government relationship with the United States." Compl. [Dkt. #1] ¶ 8. The Nation occupies a 2.8 million-acre reservation in Arizona. *Id.* ¶ 13. For approximately sixty-two miles, the Nation's reservation runs alongside the international border with Mexico. *Id.*

Plaintiff's "broader aboriginal territory" "extends throughout much of present-day Arizona and into Mexico." *Id.* ¶ 24. There are currently "[s]eventeen O'odham communities with approximately 2,000 members" in Mexico, and members of the Nation

"continue to cross the border for sacred pilgrimages and ceremonies at important religious and cultural sites." *Id.* ¶ 27.

The Nation has a "long-standing cooperative relationship" with the U.S. Government when it comes to border security and enforcement. *Id.* ¶ 34. In addition to collaborating with federal law enforcement agencies, the Nation has led a High Intensity Drug Trafficking Task Force (the NATIVE Task Force) targeting drug trafficking within the Nation's borders. Decl. of James Cook ("Cook Decl.") [Dkt. #3-5] ¶ 11. The Nation has authorized construction of "two Customs and Border Protection Forward Operating Bases on the Reservation," ten "Integrated Fixed Towers" for border surveillance, and "vehicle barriers and a patrol road along the vast majority of the border, with the exception of those areas where vehicle access is impossible due to mountainous terrain." Compl. ¶¶ 36, 38. Today, the four-foot vehicle barrier along most of the international border prevents vehicles from crossing the border but offers little resistance to pedestrians who wish to go over or under these barriers. *See* Cook Decl. ¶ 15.

## III. The Tucson 5 Project

In the spring of 2026, the U.S. Department of Homeland Security informed plaintiff of its "plans to construct a border wall and associated infrastructure along the international border within the Nation's Reservation." Compl. ¶ 49. Plaintiff has not consented to any construction. *Id.* ¶ 51. On June 26, 2026, U.S. Customs and Border Protection awarded a contract for construction of a "primary physical barrier" and "barrier system attributes" in what the Government is calling the "Tucson 5 Project." Enriquez Decl. ¶ 11. Design work

is underway. *See id.* ¶ 14. U.S. Customs and Border Protection "does not anticipate construction activities starting prior to October 12, 2026." *Id.*

## IV. Procedural History

On June 16, 2026, the Nation sued defendants Markwayne Mullin, Rodney Scott, and Rosario Vasquez ("defendants") all in their official capacities as Secretary of the U.S. Department of Homeland Security, Commissioner of U.S. Customs and Border Protection, and Chief of U.S. Border Patrol, respectively. *See* Compl. The next day, the Nation moved for a preliminary injunction halting construction of the border wall adjacent to the Nation's reservation. *See* Pl.'s Mot. for Prelim. Inj. ("Mot.") [Dkt. #3]. The Government opposes. *See* Defs.' Mem. of Points & Authorities in Opp'n to Pl.'s Mot. for Prelim. Inj. [Corrected] ("Opp'n") [Dkt. #19-1]. Plaintiff filed its reply on July 14, 2026. *See* Pl.'s Reply Mem. ("Reply") [Dkt. #25].

On July 22, 2026, the Court held a hearing on plaintiff's motion for a preliminary injunction. *See* Hr'g Tr. [Dkt. #43]. At the close of the hearing, the Court provided the parties with the opportunity to "submit a supplemental pleading based on the arguments that took place here today." Hr'r Tr. at 37:6–7. The parties submitted their supplemental briefs on July 30, 2026. *See* Suppl. Mem. of the Tohono O'odham Nation in Supp. of its Mot. for Prelim. Inj. ("Pl.'s Suppl. Br.") [Dkt. #37]; Defs.' Suppl. Br. in Opp'n to Pl.'s Mot. for Prelim. Inj. ("Defs.' Suppl. Br.") [Dkt. #39-1]. The motion is now ripe for decision.

## LEGAL STANDARD

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. NRDC, Inc.*, 555

U.S. 7, 22 (2008). To obtain a preliminary injunction, the movant "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

## ANALYSIS

### I. Likelihood of Success on the Merits

#### A. Ultra Vires *Claim*

Plaintiff argues that defendants' planned construction of the border wall is *ultra vires* because the wall will diminish the boundaries of the Reservation without express congressional authorization and will violate 25 U.S.C. § 398d.[2] While *ultra vires* review is available, I conclude that plaintiff is unlikely to succeed on the merits because the federal Roosevelt Reservation exists along the international border and, in any event, plaintiff has not established that construction of a border wall will indeed alter Reservation boundaries.

##### 1. Availability of *Ultra Vires* Review

Before getting to the merits of a nonstatutory *ultra vires* claim, the plaintiff must show that "(i) there is no express statutory preclusion of all judicial review" and "(ii) there is no alternative procedure for review of the statutory claim." *Fed. Express Corp. v. U.S. Dep't of Com.* ("*FedEx*"), 39 F.4th 756, 763 (D.C. Cir. 2022) (internal quotation marks

[2] 25 U.S.C. § 398d provides that "[c]hanges in the boundaries of reservations created by Executive order, proclamation, or otherwise for the use and occupation of Indians shall not be made except by Act of Congress."

omitted). Defendants argue that IIRIRA Section 102(c)(2) expressly precludes review of plaintiff's *ultra vires* claim. On this point, I disagree.

"Judicial review for *ultra vires* agency action 'rests on the longstanding principle that if an agency action is unauthorized by the statute under which [the agency] assumes to act, the agency has violate[d] the law and the courts generally have jurisdiction to grant relief.'" *FedEx*, 39 F.4th at 763 (quoting *National Ass'n of Postal Supervisors v. USPS*, 26 F.4th 960, 970 (D.C. Cir. 2022)). The "presum[ption] that agency action is judicially reviewable," however, "may be overcome by specific language that is a reliable indicator of congressional intent." *DCH Reg'l Med. Ctr. v. Azar*, 925 F.3d 503, 505 (D.C. Cir. 2019) (quoting *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017)). The relevant question, then, is whether Congress has "clearly and directly" prohibited judicial review of plaintiff's *ultra vires* claim. *Bd. of Governors of Fed. Rsrv. Sys. v. MCorp Fin., Inc.*, 502 U.S. 32, 44 (1991).

Defendants argue that IIRIRA's waiver provision—Section 102(c)(1)—and the accompanying jurisdiction-stripping provision—Section 102(c)(2)—preclude plaintiff's *ultra vires* claim. Section 102(c)(1) provides:

> Notwithstanding any other provision of law, the Secretary of Homeland Security shall have the authority to waive all legal requirements such Secretary . . . determines necessary to ensure expeditious construction of the barriers and roads under this section.

8 U.S.C. § 1103 note.

Section 102(c)(2)(A) provides:

> The district courts of the United States shall have exclusive jurisdiction to hear all causes or claims *arising from any action undertaken, or any decision*

> *made, by the Secretary of Homeland Security pursuant to paragraph (1).* A cause of action or claim may only be brought alleging a violation of the Constitution of the United States. The court shall not have jurisdiction to hear any claim not specified in this subparagraph.

*Id.* (emphasis added). The connection between plaintiff's *ultra vires* claim and the jurisdiction-stripping provision is not obvious. Plaintiff argues that defendants' planned construction of the border wall is *ultra vires* because the wall will diminish reservation boundaries without congressional authorization. Unlike many recent border wall cases, plaintiff does not challenge the legality of a secretarial waiver pursuant to IIRIRA Section 102(c)(1). *See, e.g.*, *Ctr. for Biological Diversity v. McAleenan*, 404 F. Supp. 3d 218, 235 (D.D.C. 2019). Defendants nevertheless argue that Section 102(c)(2)'s jurisdiction-stripping provision applies here because *ultra vires* review is available only when "there is no alternative procedure for review of the statutory claim," *FedEx*, 39 F.4th at 763, and plaintiff relies on the Secretary's waiver of the Administrative Procedure Act to satisfy this requirement. In other words, because plaintiff's *ultra vires* claim is "premised on an IIRIRA waiver," Section 102(c)(2) precludes plaintiff's claim. Defs.' Suppl. Br. at 4.

Our Circuit's reasoning in *North American Butterfly Association v. Wolf* strongly suggests—if not requires me to find—that plaintiff's *ultra vires* claim about diminishment of reservation boundaries does not "arise from" the Secretary's 2008 waiver of the Administrative Procedure Act. In *North American Butterfly*, our Circuit Court explained that Section 102(c)(2) "[b]y its terms . . . does not extend to construction or related activities that do not necessarily flow from exercise of the waiver authority as such, but that IIRIRA section 102(a)-(b) authorizes independently." 977 F.3d 1244, 1260 (D.C. Cir. 2020).

"Because 'arise' out of means 'to originate from a specified source, the phrase 'arising out of' generally requires 'a causal connection,' not merely a 'logical' one." *Id.* (internal citations omitted).

The 2008 waiver *enables* plaintiff to bring an *ultra vires* claim because there are no other avenues for judicial review. But it can hardly be said that the Secretary's waiver *caused* plaintiff's *ultra vires* claim. *Cf. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 362 (2021) (explaining, in the context of personal jurisdiction, that "arise out of" requires a "causal showing"). Interpreting Section 102(c)(2)'s "arising from" language to "require[] a causal connection," *North American Butterfly*, 977 F.3d at 1260 (internal quotation marks omitted), also gives effect to IIRIRA's specific reference to Section 102(c)(1). Congress could have stripped jurisdiction over any actions or decisions pursuant to the Secretary's authority under Sections 102(a) and 102(b), but it instead focused the jurisdiction-stripping provision on the Secretary's waiver authority under Section 102(c). Consistent with this reasoning, at least one court has exercised jurisdiction over *ultra vires* claims "challeng[ing] the scope of the Secretary's authority to build roads and walls under section 102(a) and 102(b), not the scope of waiver authority under section 102(c)." *In re Border Infrastructure Env't Litig.*, 915 F.3d 1213, 1221 (9th Cir. 2019). Section 102(c)(2) therefore does not supply "clear and convincing evidence that Congress intended to deny the District Court jurisdiction" over plaintiff's *ultra vires* claim. *MCorp*

*Fin., Inc.*, 502 U.S. at 44.[3]

### 2. **Merits**

That hurdle aside, to succeed on the merits of its *ultra vires* claim, plaintiff must establish that defendants have "plainly act[ed] in excess of [their] delegated powers and contrary to a specific prohibition in the statute that is clear and mandatory." *FedEx*, 39 F.4th at 763 (internal quotation marks omitted). As I have said before, "*ultra vires* review is a high bar"—it is the ultimate "Hail Mary pass." *Nat'l Tr. for Historic Pres. v. Nat'l Park Serv.*, 827 F. Supp. 3d 93, 104 (D.D.C. 2026) (quoting *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025)). Plaintiff is unlikely to clear this high bar.

To succeed on an *ultra vires* claim, the plaintiff must show that "the agency has 'stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court.'" *FedEx*, 39 F.4th at 764 (quoting *Griffith v. FLRA*, 842 F.2d 487, 493 (D.C. Cir. 1988)). "Only error that is patently a misconstruction of the Act, that disregards a specific and unambiguous statutory directive, or that violates some specific command of a statute will support relief." *Id.* (cleaned up). The legal error must be "so extreme that one may view it as jurisdictional or nearly so." *Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 722 (D.C. Cir. 2022) (quoting *Griffith*, 842 F.2d at 493).

[3] Defendants do not separately argue that there is a "statutory review scheme provid[ing] aggrieved persons with a meaningful and adequate opportunity for judicial review." *Nuclear Regul. Comm'n v. Texas*, 605 U.S. 665, 681 (2025) (internal quotation marks omitted).

Plaintiff argues that the proposed border wall will unlawfully diminish the Nation's reservation boundaries without the authority of Congress and in violation of 25 U.S.C. § 398d. Plaintiff's *ultra vires* claim suffers, unfortunately, from multiple deficiencies.

*First*, the Roosevelt Reservation likely exists along the international border. In 1907—ten years before the creation of the Nation's modern-day Reservation by executive order—President Theodore Roosevelt "set apart as a public reservation[] all public lands within sixty feet of the international boundary between the United States and the Republic of Mexico." Proclamation of May 27, 1907, 35 Stat. 2136, 2136 [Dkt. #18-3]. Plaintiff argues that it had aboriginal title to the land *before* the creation of the Roosevelt Reservation, so the Nation's lands were not "public lands," and therefore the Roosevelt Reservation has never existed on the reservation. Mot. at 22–31. But historical evidence casts doubt on plaintiff's theory.

In a 1934 dispute before the Solicitor of the Interior, the Nation argued that they held rights to land "in fee by virtue of a title vested in them before the area in question came under the sovereignty of the United States," so "the land never became part of the public domain," or "public lands." Solicitor's Memorandum Opinion M-27656 (Mar. 1, 1934) at 360, *supplemented by* M-27656 (Supp.) (May 7, 1934) [Dkt. #18-7]. The Solicitor of the Interior issued an opinion concluding that "the interest of the [Nation] in the land they claim [is] subordinate to a superior proprietorship in the United States." *Id.* at 363. The Nation did not "have a perfected title in fee which precludes the United States from exercising any proprietorship over the land." *Id.* While the opinion recognized that the Nation retained the "Indian right of surface occupancy," *id.* at 438, this right was not

equivalent to an "independent title which can . . . embarrass any future action that to Congress may seem appropriate in the premises." *Id.* at 438, 370–71. The opinion therefore calls into question plaintiff's claim that the Reservation land was not "public land" before the President established the Reservation in 1917.

Subsequent practice reflects multiple instances in which the Government and the Nation acknowledged the existence of the Roosevelt Reservation. In 1937, Congress passed a law modifying the boundaries of the Nation's Reservation but expressly noting that "[t]his extension shall not affect . . . the reservation of a strip of land sixty feet wide along the United States-Mexico boundary made by proclamation of the President dated May 27, 1907." Act of July 28, 1937, Pub. L. No. 75-217, 50 Stat. 536 [Dkt. #18-4]. And as recently as 2004, the Nation—in approving construction of a vehicle barrier along the international border—acknowledged that U.S. Border Patrol "plans to construct the border vehicle barrier and road entirely within the sixty-foot strip of land reserved by the Presidential Proclamation of President Theodore Roosevelt dated May 27, 1907." Resolution No. 04-095 (Mar. 8, 2004) [Dkt. #18-6].

Plaintiff points to other historical evidence to argue that the Roosevelt Reservation has never existed on the Nation's Reservation because the Reservation was never "public land," but plaintiff's evidence is flawed. The 1968 Indian Claims Commission decision that recognized the Nation's aboriginal title also stated specifically that the "Gadsden Purchase of 1854 brought the subject lands under United States sovereignty and *they became public land* by the Act of July 22, 1854." 19 Ind. Cl. Comm. 394, 432 [Dkt. #3-15] (emphasis added). The decision goes on to say that the "[1854] Act provided for the

application to the new public lands of the pre-emption laws of the Territory of New Mexico *other than on lands covered by claims based on Spanish or Mexican law*." *Id.* (emphasis added). Plaintiff suggests that this phrase included claims based on aboriginal title. *See* Reply at 7–8. But the case plaintiff relies on does not say this outright. *See United States v. Santa Fe Pacific Railroad Co.*, 314 U.S. 339, 351 (1941) ("[T]hese Acts were concerned not with the problem of ascertaining the boundaries of Indian country but with the problem of quieting titles originating under Spanish or Mexican grants.") Such conflicting historical evidence is not the stuff of successful *ultra vires* claims.[4]

*Second*, even if the Roosevelt Reservation does not exist on the Nation's Reservation, plaintiff has not shown how construction of a wall on the existing international border will change the boundaries of the Nation's reservation. The core of plaintiff's *ultra vires* theory is that only Congress can "adjust the Nation's boundaries." Pl.'s Suppl. Br. at 2. As a legal matter, it is well-established that Congress has exclusive authority to diminish reservation boundaries, and that Congress must make its intent to do so clear and unambiguous. *See McGirt v. Oklahoma*, 591 U.S. 894, 903–04 (2020). But I am not aware of any case holding that construction of a border wall adjacent to a Reservation—with the possibility of activities that may interfere with the Nation's use and occupancy rights—necessarily diminishes the Reservation's boundaries.

[4] Plaintiffs' reliance on references to the Nation's grazing of cattle up to the border is not persuasive because, as defendants argue, "[t]here is no conflict between the federal government's reservation of the land for national security purposes and transient uses like grazing." Defs.' Suppl. Br. at 8.

To the contrary, the establishment of non-Indian towns, or the sale of property to non-Indians, does *not* change the reservation status of the lands. *See, e.g.*, *Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 358–59 (1962) (rejecting argument that "lands owned by towns" were "exclud[ed] from a reservation"). As defendants persuasively argue, "constructing a border barrier is not the type of action that could change the status or boundaries of a reservation." Defs.' Suppl. Br. at 5.

Plaintiff's novel *ultra vires* theory therefore fails to meet the "high bar," *Nat'l Tr. for Historic Pres.*, 827 F. Supp. 3d at 104, for extraordinary equitable relief.

### B. *Trespass Claim*

As a fallback, plaintiff argues that defendants' planned border wall may be enjoined for the independent reason that it constitutes a trespass on the Reservation. Plaintiff's trespass claim is unlikely to succeed on the merits because the federal government's sovereign immunity bars its claim.

As our Circuit has explained, "claims against the federal government and its actors are jurisdictionally barred by sovereign immunity." *Schilling v. U.S. House of Representatives*, 102 F.4th 503, 506 (D.C. Cir. 2024). Congress may waive sovereign immunity through "clear statutory text" in statutes such as the Administrative Procedure Act or the Federal Tort Claims Act. *Id.* Courts interpret such statutes "strictly," and any exceptions to the Government's sovereign immunity "are not to be lightly implied." *Block v. N. Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). Plaintiff does not argue that any statute waives sovereign immunity here. It couldn't!

Instead, plaintiff relies on the *Larson-Dugan* exception to sovereign immunity for both its *ultra vires* and trespass claims. Under the *Larson-Dugan* exception, "if the federal officer, against whom injunctive relief is sought, allegedly acted in excess of his legal authority, sovereign immunity does not bar a suit." *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1329 (D.C. Cir. 1996) (citing *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 690–91 (1949)). In other words, sovereign immunity does not bar successful *ultra vires* claims. As explained *supra* Section I.A., plaintiff's *ultra vires* claim fails on the merits so the *Larson-Dugan* exception cannot operate to waive defendants' sovereign immunity for plaintiff's trespass claim.

Plaintiff argues that the *Larson-Dugan* exception also extends to suits seeking "an injunction against a state officer who abridges a common law duty without statutory authorization." Mot. at 19–20 (quoting *Leopold v. Manger*, 102 F.4th 491, 495 (D.C. Cir. 2024)). But the cases cited by plaintiff all involve mandamus petitions seeking access to documents under the common law right of public access. *See Leopold*, 102 F.4th at 493; *Schilling*, 102 F.4th at 505; *Leopold v. Sullivan*, 823 F. Supp. 3d 59, 64 (D.D.C. 2026). As far as I can tell, no court has extended the *Larson-Dugan* exception to common law tort claims, let alone trespass claims, seeking injunctive relief against the Government.

However, even if plaintiff established a waiver of the Government's sovereign immunity, the availability of a federal common law trespass claim by an Indian tribe against the federal government is at best uncertain. Plaintiff relies on dicta to suggest the availability of such a cause of action. *See Edwardsen v. Morton*, 369 F. Supp. 1359, 1371 (D.D.C. 1973) (explaining that "officers are themselves liable in trespass if their actions

cause[] third parties to enter the land" but concluding that "resort to that principle of tort law actually is unn[e]cessary in view of the fiduciary duty of the federal government and its agents to protect the interests of Native Americans"). But plaintiff has not identified any case (outside the context of a Federal Tort Claims Act claim for damages) involving a common law trespass suit against the Government.

Indeed, significant uncertainties remain about the actual scope of construction activities and the extent to which they may interfere with the Nation's land outside the Roosevelt Reservation. *See* Enriquez Decl. ¶ 13 ("[T]he contractor has been instructed to confine the project footprint . . . to the 60-foot federal Roosevelt Reservation."). At this early stage, plaintiff has not established a "'clear showing' of entitlement" to the extraordinary remedy of preliminary injunctive relief. *Haynes v. Navy Fed. Credit Union*, 841 F. Supp. 2d 221, 223 (D.D.C. 2012) (quoting *Winter*, 555 U.S. at 21).

## II. Remaining *Winter* Factors

Because plaintiff is unlikely to succeed on the merits, I could deny relief on that basis alone. *Cf. Clevinger v. Advoc. Holdings, Inc.*, 134 F.4th 1230, 1236 (D.C. Cir. 2025). But for the sake of completeness, I will briefly address the remaining *Winter* factors, all of which favor defendants.

To prevail, plaintiff must show that it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter*, 555 U.S. at 20. The threat of harm must be "both certain and great, actual and not theoretical, beyond remediation, and of such *imminence* that there is clear and present need for equitable relief." *Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015) (internal quotation marks omitted). Plaintiff

must also show that "the balance of equities tips in [its] favor," and that "an injunction is in the public interest." *Winter*, 555 U.S. at 20. When "the Government is the opposing party," these final two factors "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Plaintiff argues that the planned border wall will inflict irreparable harm to its sovereignty and proprietary control over its lands, as well as cause environmental and First Amendment harms. *See* Mot. at 41–43. Plaintiff's alleged harms based on its claim to the land leading up to the international border are not likely to materialize because, as explained *supra* Section I.A.2., the Roosevelt Reservation likely exists along the Nation's border, and defendants have not yet articulated plans to construct outside the Roosevelt Reservation. Regarding the environmental and First Amendment harms, plaintiff has pointed to numerous harms to the landscape, including "four sets of mountain peaks" that are "sacred peaks to the Tohono people." Hr'g Tr. at 12:11–12, 15. Defendants note, however, that plans have not yet been finalized for the border wall, and that many—if not all—of plaintiff's alleged environmental and First Amendment injuries could be mitigated through consultation with the Nation and accommodations, such as crossing gates to enable members of the Nation to access the international border. *See* Enriquez Decl. ¶¶ 16–17, 24–29, 33. Given the possibility of mitigating plaintiff's injuries, I find that plaintiff has not yet established irreparable harm that is "certain" and "great." *Mexichem Specialty Resins, Inc.*, 787 F.3d at 555 (internal quotation marks omitted).

And in any event, I find that the Government's interests in securing the border, enforcing immigration laws, and ensuring public safety outweigh any surviving irreparable harms at this juncture. "The Supreme Court has recognized that the public interest in

enforcement of the immigration laws is significant." *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211, 1221 (D.C. Cir. 1981). Congress, through enacting IIRIRA and appropriating funds for border wall construction, has identified physical border walls as a key component of border security. Given the national security and foreign policy considerations related to the border wall, deference to the Government is warranted, particularly for plaintiff's *ultra vires* claim. *See Changji Esquel Textile Co. v. Raimondo*, 40 F.4th 716, 723 (D.C. Cir. 2022).

## CONCLUSION

The international border is an area of great significance to both the United States and to the Nation. While I have concluded that a preliminary injunction is unwarranted, I fully expect the Government in the months ahead to follow through on its guarantees of consultation and cooperation with the Nation to address the Nation's concerns regarding border wall construction!

For the foregoing reasons, it is hereby **ORDERED** that plaintiff's Motion for a Preliminary Injunction [Dkt. #3] is **DENIED**. An accompanying order will issue contemporaneously with this opinion.

RJLeon

RICHARD J. LEON
United States District Judge

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| TOHONO O'ODHAM NATION,<br><br>Plaintiff,<br><br>v.<br><br>MARKWAYNE MULLIN, *et al.*,<br><br>Defendants. | ) | Civil Case No. 26-2127 (RJL) |

**ORDER**

August 13th, 2026 [Dkt. #3]

For the reasons set forth in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that plaintiff's Motion for Preliminary Injunction [Dkt. #3] is **DENIED**.

**SO ORDERED.**

RJLeon
RICHARD J. LEON
United States District Judge